**STATE of Missouri, Respondent,**

v.

**William Prell BRIZENDINE, Appellant.**

**No. 50867.**

Supreme Court of Missouri,

Division No. 2.

June 14, 1965.

Motion for Rehearing or for Transfer to Court En Banc Denied July 12, 1965.

**899**

Norman H. Anderson Atty. Gen., Jefferson City, David G. Dempsey, Asst. Atty. Gen., Clayton, for respondent.

Robert G. Duncan, Kenneth K. Simon, Simon & Pierce, and Michael D. Konomos, Kansas City, for appellant.

PRITCHARD, Commissioner.

In this case of murder in the first degree, for which defendant's punishment was set at life imprisonment by a jury, the sole issue is whether defendant was entitled to have the jury instructed upon a defense of insanity at the time of the commission of the crime.

On the evening of October 6, 1963, defendant, referred to as "Flapjack," came into the Lafayette Hotel, at 1205 Troost in Kansas City, Missouri, spoke to the night clerk, Mary Anderson, and went upstairs. A few minutes later Mary heard a noise, and defendant came back down. Then Janice Clark came down and made a telephone call. Mary testified that defendant walked, did not run, and didn't appear to be drunk. He lived in the hotel, and his father lived across the hall from where deceased lived. At about 8:30 p. m., deceased, G. D. Miller, in response to a knock, opened the door of Apartment 112 in the hotel, where he lived with Janice. Janice saw a gun and testified that defendant said, "Miller, are you my friend?" Miller said, "Yes," and was shot. Defendant then ran downstairs, and Janice also ran downstairs and called the police. There was testimony from Janice that deceased and defendant had an argument a week before in which defendant threatened deceased with a shotgun. Shortly before the homicide, defendant and one Larry Erickson had a conversation or argument in "Sargent's" Cafe about a girl. Defendant then had a gun in his hand pointed at Erickson, and was asking "Where Irene was."

Later in the evening, defendant came running in without knocking at the abode of Claudia Cox and Clara Edmeston Powell and gave Clara a pistol. The bullet found in deceased's body was testified by William J. Myers, Supervisor of Ballistics at the Police Department, to have been fired from the pistol. At the time defendant appeared at the home of Claudia and Clara he was "all excited." He kept walking back and forth and was "awfully nervous," and was

hysterical. In a statement given by Claudia to the police, brought out on her cross-examination, she said that defendant told her he "killed G. D." but didn't know what happened, and that the gun went off accidentally and he didn't mean to do it.

Prior to the trial, defendant by his then counsel filed a motion "that defendant be examined by persons competent to determine his mental capacity and ability to aid counsel in his defense." The reasons given for the motion were that defendant had been unable to comprehend the questions asked him by counsel, and that defendant was unable to understand and comprehend that he was charged with first degree murder. It was stated in the motion that, in the opinion of movant, the defendant was so mentally ill that he was unable to aid in his own defense, or to understand the gravity of the proceedings against him. The prayer was that "in order to protect defendant in his Constitutional rights, proper psychiatrists, neurologists and/or competent physicians should examine this defendant and report to this Court their considered opinion regarding defendant's mental ability to understand the proceedings against him and to aid counsel in his defense."

An order was made sustaining the motion, and pursuant thereto the report of the examining psychiatrist, Dr. Waraich, Acting Superintendent of State Hospital No. 2 (Division of Mental Diseases) at St. Joseph, Missouri, was filed in the trial court and was read to the jury. The parts of the report pertinent to defendant's claimed errors of the trial court in failing to instruct the jury on the defense of insanity and criminal irresponsibility are as follows: "The physical examination is essentially negative. The neurological studies reveal no focal signs except for minimal congenital cerebral palsy due to difficulty at the time of birth (not significant). All the laboratory studies, including X-ray of the chest, are within normal range. Psychometric studies give him an I.Q. of 74 (WAIS), which means that he is functioning within the borderline range of intellectuality. Psychiatric studies reveal a rather egocentric, suspicious, well-nourished, well-developed, white man who shows no disturbances of his thinking processes. There is no evidence of any mood variation. However, he shows acting-out behavior disorder with symptoms of alcoholism, drug addiction, eccentricities, querulousness and hypochondriasis. The main disturbance is in the area of his relations with others. Here we see disturbance in his activities such as capacity for work, for enjoyment, and for sex life. His object relations are shallow and weak. Therefore, he has no consideration for others. He lacks depth of feelings. Much of his acting-out and emotional outbursts are only an attempt to break through his insensitiveness. His judgment is defective. This individual shows no evidence of psychosis or insanity. However, it may be stated that under extreme stress and frustration he may develop psychotic behavior. Diagnosis: Personality pattern disturbance, schizoid personality. Recommendations: This patient is not psychotic or insane. There is no evidence of neurosis. He shows a mild degree of mental deficiency which is not disabling. He has adequate intellectual capacity to assist his counsel in the conduct of his legal defense. Therefore, we respectfully suggest that his case be handled through the ordinary channels of criminal law."

Defendant's points, three in number, all relate to the claimed defense of insanity or criminal irresponsibility: That the court erred, upon request, in failing to instruct the jury on said issue; that Instruction No. 1, given on behalf of the state over defendant's objection, was erroneous in that it did not cover the defense of insanity or criminal irresponsibility; and that the court erred in refusing to give Instruction 9 offered by defendant on said issue because, as contended, there was evidence to support such an instruction.

On November 12, 1963, defendant was arraigned during which he was advised of his right to counsel. The court then offered to appoint counsel for defendant, but he waived the right of counsel and the court found that he was mentally able and sufficiently informed to decide his need for counsel. Defendant then personally entered his plea of not guilty to the charge of first degree murder. The before-mentioned pre-trial motion for mental examination was filed by defendant's then counsel, Mr. Michael D. Konomos, on January 30, 1964.

On October 13, 1963, after the homicide but before the arraignment, new Chapter 552 of Criminal Procedure, entitled "Mentally Ill Persons in Criminal Cases," became effective. The provisions of that legislation were not utilized in this case. As counsel for defendant here states, "It is apparent from the transcript that neither appellant, the State, nor the Court, was aware of, or at least proceeded under Chapter 552."

Section 552.030 [1] provides in part as follows:

"1. A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law.

"2. Evidence of mental disease or defect excluding responsibility shall not be admissible at trial of the defendant unless the defendant at the time of entering his plea to the charge pleads not guilty by reason of mental disease or defect excluding responsibility, or unless within ten days after a plea of not guilty or at such later date as the court may for good cause permit, he files a written notice of his purpose to rely on such defense. * * *"

■ Defendant at no time made a plea of not guilty by reason of mental disease or defect excluding responsibility for the commission of the crime, thus following the procedure of Chapter 552. He contends his pre-trial motion for a mental examination was sufficient as written notice of his intention to rely upon that defense. We rule otherwise. The motion was only for an examination of defendant's mental condition *at the time the motion was made*, and it concerned only his then mental ability to aid counsel in his defense.

The report of Dr. Waraich, above, came into evidence and was read to the jury without objection by the state. We need not now decide whether the requirements of § 552.030, subd. 2, supra, are mandatory upon defendant. If so, undoubtedly the state has waived them by failing to object to the admission of the report as claimed evidence of mental irresponsibility. There was also no objection to any testimony of defendant's actions before, during or after the homicide, which, as claimed, are also evidence of mental irresponsibility.

■ It is not material here whether the procedure used was under the superseded "knowing right from wrong" test of insanity, or was under § 552.030, subd. 1, supra. Both require an instruction to be given if there is substantial evidence of insanity or mental irresponsibility. State v. Johnson, Mo., 267 S.W.2d 642, 644; § 552.030, subd. 5. Our inquiry then is whether there existed substantial evidence of defendant's insanity or mental irresponsibility *at the time of the homicide*. State v. Pinski, Mo., 163 S.W.2d 785. See also State v. Moore, Banc, Mo., 303 S.W.2d 60, 69 [11], where it was said, "While great latitude is allowed in the admission of evidence in a criminal case where a defense of insanity is interposed, the evidence nevertheless must be relevant and material to the issue of defendant's mental condition *at the time of the commission of the act charged,* * * *." (Emphasis added.)

---

1. Statutory references are to RSMo 1959, V.A.M.S.

Defendant's conduct before, during and after the killing does not establish insanity which would be a defense under the law. No evidence was offered that would show that defendant had a mental disease as defined by law. The fact that defendant made threats against deceased prior to the homicide; that he pointed a gun at someone else in a cafe, asking "Where Irene was"; his statement to deceased before he shot him; and his actions after the homicide, including nervousness and hysteria, do not establish such mental disease or defect. No witnesses testified in connection with their observations before, at, or after the commission of the homicide that defendant lacked the requisite mental capacity to commit the crime.

■ We examine the report of Dr. Waraich to see if there is any statement or term used which would substantially indicate that defendant was suffering from any continuing, permanent mental incapacity which would relate to the time of homicide. Of course, the report relates only to the time of defendant's pre-trial motion, and the conclusion of the report is that defendant was mentally able to assist his counsel in the conduct of his legal defense. However, the report was in evidence and was read to the jury. We rule that there was nothing therein contained as would be substantial evidence of insanity or mental irresponsibility. The doctor twice states unequivocally that there was no evidence of psychosis or insanity. See Robinson v. United States (C.C.A.6th Cir.), 144 F.2d 392, 398 [14], where the court said, "The diagnosis in this case is, 'without psychosis.' This term is used by psychiatrists to signify that an individual is not insane and that he does not suffer from any form of mental disorder which would render him incompetent and irresponsible." The I.Q. of 74 (WAIS), "which means that he is functioning within the borderline range of intellectuality," does not show in itself that defendant was mentally disabled. In State v. Pinski, supra, loc. cit. 163 S.W.2d 787 [2–4], it was said, "Moronity, mere weakness of intellect, or subnormal mental capacity, is not in and of itself such insanity or mental incapacity as constitutes an excuse or defense to a crime. (Citing cases)." See also State v. Jackson, 346 Mo. 474, 142 S.W.2d 45, 49 [10]. The statement, "However, it may be stated that under extreme stress and frustration he may develop psychotic behavior," does not establish that such a degree of stress and frustration existed in this case at the time of the homicide as would show such behavior.

■ The diagnosis that defendant is a "schizoid personality" does not establish his mental incompetency at the time of the commission of the homicide. In Gradwohl, "Legal Medicine," page 891, we find these two paragraphs:

"The schizoid group consist of classes of individuals with sufficient defects of affective response that they become social problems to themselves, often to relatives, and most often to society in general. These inadequate personalities are unable to meet fully the social, intellectual, emotional, and physical demands of society although psychiatric and physical examination shows that these individuals are not insane. It is evident, as most of them will profess, that they do not have the feeling of possessing the know-how of life and are unable to bring about the economic and social integration that they find required of them. As a group they are low in empathy, vague, passive-dependent or passive-aggressive and complain of low or high feeling-tone intensity which is commonly mixed and unpleasant.

"The schizoid personality is as described above with a grave consciousness of his defects. He reacts to his defects with seclusiveness, suspicion, single-mindedness, serious rumination, and odd defenses against the pain of his acute self-consciousness."

It is apparent that the description of defendant given by Dr. Waraich in his report generally fits the above definition of a schizoid personality, and also the exclusion from the terms "mental disease or defect" an abnormality manifested only by repeated criminal or otherwise anti-social conduct under § 552.010. There is no evidence of insanity or mental irresponsibility in this case which would require the court to give an instruction thereon. State v. Hutchin, Mo., 353 S.W.2d 701, 703 [7]. Defendant's points are overruled.

We have examined the matters covered by Supreme Court Rules 28.02 and 28.08, V.A.M.R., and find no error.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.