Willie B. DAVIS, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 54213.

Supreme Court of Missouri,
Division No. 2.

July 14, 1969.

John E. Reaban, Jr., Kirkwood, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

On October 24, 1955, Willie B. Davis entered pleas of guilty to seven counts of robbery in the first degree by means of a dangerous and deadly weapon. He was sentenced to life imprisonment on two counts and to twenty years' imprisonment on five counts, the sentences to run concurrently. The details of the original offenses are obscure but it appears from the meager record here that in the course of one of the robberies someone was killed and one of Davis' fellow-robbers, one of the Burnetts, was tried and sentenced to be executed but his sentence was commuted to life imprisonment. In any event there is no claim here that Davis was innocent of any of the seven robberies with which he was charged. In 1968 he filed seven separate motions under Criminal Rule 27.26, V.A.M.R. to vacate the sentences, counsel was appointed, there has been a hearing on the motions, they have all been denied and he has appealed, all the causes having been consolidated and heard as one in both the circuit court and here.

Upon this appeal appellant's counsel has briefed and argued one principal assignment of error with six alleged supporting subdivisions. The principal point is stated in this language: that the "court erred in its findings that the defendant failed to carry the burden of proof on his claim that his plea of guilty was entered involuntarily and in concluding as a matter of law that there are no grounds or causes for setting aside defendant's pleas of guilty * * * *because the court did not properly consider defendant's facts* which support each of the grounds set out * * * *under the evidence of testimony and exhibits* before the court, and because the court concluded that there was no supporting evidence." (Emphasis supplied.) In this connection it is argued that there was supporting evidence that defendant "was under the influence of drugs *at the time of the trial,*" that "the trial court prevented" him selecting counsel of his own choosing, that his court-appointed attorneys *"had insufficient time to discuss and confer with each other,"* that he "lacked the mental capacity to understand the nature of the proceeding against him," that he was not adequately represented "and was not fully informed at the time of the pleas" and finally that he was "placed in apprehension and coerced into pleading guilty." These points are set out in some detail even though one, lack of mental capacity, is made without citation of authority, and one or more pose all but meaningless questions, "was not fully informed at the time of the pleas." The state has made what it calls a "response" to each of these points; for the most part it is that defendant did not sustain his burden of proof and that upon the record the court's finding as to each of the specific points is supported.

This detailing of the appellant's claims and the state's responses is also necessary to place them in the perspective of the record upon which they and the appeal as a whole must be determined. As stated, this is a 27.26 proceeding to set aside the sentences on pleas of guilty and there was a hearing on the motion—the defendant and his counsel were present throughout—, and the defendant has appealed. Purportedly

there is on file in this court a complete transcript approved by the defendant's attorney and by the state's attorney. Despite this approval by the state's attorney very little of the transcript relates to the points or to the appeal as a whole. The first fifty pages consist of the appellant's motions and a series of attached "Memorandum and Appendix." These memoranda purport to set forth Davis' statement of occurrences in 1955 and 1957. One "appendix" consists of a recitation of certain federal rules and cases and appendix "C" is said to be a transcript of a habeas corpus hearing in the Circuit Court of Cole County. Another "appendix" relates that appellant "was shot in the back during the process of an alleged robbery, on the 23rd day of December 1954" and it is said in this document that it was while he was thus wounded and in the hospital that he was "injected with a sedative" and interrogated by the police.

All this data is set forth in the transcript and a state's attorney has approved it and briefed the cause or responded to the appellant's brief and argument as though these various and sundry documents are not only a part of the record but lend some support to or are to be considered in connection with the appellant's assignment of errors. But upon the hearing of the consolidated motions on June 3, 1968, the record states that Davis was sworn and testified but after stating his name and place of confinement he started reading "a little memorandum"—a seven-point summary of some of the other papers he had filed. Finally the court interrupted and said, "Now, these matters which you have detailed for the record, do you have any evidence to sustain any of these allegations?" The appellant made another rambling statement and after his own counsel inquired whether he "would like to start at the beginning and go through exactly what happened?" Davis replied, "No. I believe I would rather stand on the merits of my motion and have the court to read the merits of my motion and its appendix, into the records." And then his counsel read parts of these papers into the record. When asked by his lawyer whether there was "anything else" the defendant said, "We read part of the motion, but we have not discussed the opinions, and I move this Honorable Court, with all due respect to the court, to take due consideration to the appendix that I have placed here before this court." Following this procedure the state's attorney asked some questions including an inquiry as to whether he was now being "properly represented by counsel." Appellant said, "No, I am not. I am now claiming that—like before, I never claimed that Mr. Metz was improper—I am now claiming that like I had before that I don't think my attorney has had the proper time to go over all the allocutions (sic) that are in motion—just like Mr. Metz was not prepared for the proceedings in the beginning." And finally the court inquired as to his position "On the question of whether or not you were guilty of any of these crimes you were charged with." The appellant replied: "I state, again, with all due respect to the court this is irrelevant and has no bearing on the issues. We are not arguing whether I am guilty. We are here to argue the proceeding that were held in a court and its constitutionality. It is no longer a criminal case. This is now a civil action of constitutionality."

■ Tempting as it may be, it is not necessary to characterize this transcript—an experienced trial judge exercised considerable restraint. It is sufficient for the purposes of this opinion to again say that proceedings to withdraw pleas of guilty or to vacate sentences contemplate an orderly lawyer-like presentation of meritorious issues. Painter v. State, Mo., 438 S.W.2d 227; Rush v. State, Mo., 439 S.W.2d 504. The motions, affidavits, "the memorandum and appendix," do not prove themselves—the burden of proof in these after-trial proceedings is upon the applicant and any allegations or claims of invasions of rights must be supported by proof, by records and where necessary oral testimony. State v.

Jordan, 353 Mo. 405, 182 S.W.2d 563. It ill behooves one who takes charge of his 27.26 hearing, refuses to give evidence and in his own language "stand(s) on the merits of my motion" and "its appendix," meaning his own unsupported, self-serving declarations and statements, and then complain of a lack of proper, lawyer-like representation and a lack of understanding in pleas of guilty to six or seven robbery charges in which at least one person was killed.

Upon this appeal and upon the hearing in the circuit court appellant has been represented by experienced counsel but his cause here is to be determined from so much of the transcript as may be said to constitute the testimony of Davis himself, his father and his mother and the state's proof together with the authenticated records. Mr. Noskay, with twenty-six years' experience in the public defender's office, remembered Davis' cases and produced the records of his office which showed that Davis was first interviewed by Mr. O'Hanlon and on February 10, 1955, Noskay appeared with the defendant on arraignment and entered a plea of not guilty. Noskay also represented the Burnetts and in connection with their case talked to Davis. In the meanwhile, in May 1955, upon motion of the public defender there was a psychiatric examination of Davis with a finding "that this patient is not psychotic, but is suffering from migraine, which in no way interferes with his reasoning, abstractions, deductions and power to choose right from wrong. This patient can be discharged from the hosital immediately." On October 24, 1955, almost eight months after entering the plea of not guilty Mr. Metz of the public defender's office appeared in court with the defendant and, as indicated, he entered his pleas of guilty.

The only testimony with respect to a lawyer, other than the public defender's office, was that of Davis' mother. She did not remember the lawyer's name, he lived in East St. Louis, but she went to his office, paid him $50.00 to represent her son, but she never heard of the lawyer again and he has never entered his appearance in any of the cases or proceedings.

Upon this record the trial court in its judgment made a finding that "the claims made by Defendant Davis are without supporting evidence whatsoever," that it was his duty "to carry the burden of proof and to prove the charges made. This, the defendant failed to do." In all seven cases there were pleas of guilty many months after the original charges and it does not appear that any confessions or admissions were either secured or used in any of the cases or that they entered into the pleas of guilty. There is, of course, no evidence that appellant, in the language of his assignment "was under the influence of drugs at the time of the trial." Aside from its uniqueness, there is also no support for the claim that his court-appointed attorneys "had insufficient time to discuss and confer with each other." In short, the court's judgment and finding of no evidentiary support of any of the assignments of error or that appellant failed to sustain his burden of proof (Crosswhite v. State, Mo., 426 S.W.2d 67) are both apparent and demonstrable upon this record and there is no merit in his motions to set aside the various judgments. State v. Davis, Mo., 438 S.W.2d 232; State v. Roark, Mo., 428 S.W.2d 508; State v. Brizendine, Mo., 391 S.W.2d 898; State v. Harris, Mo., 382 S.W.2d 642. The record here and the posture of appellant's assignments are wholly unlike State v. Blaylock, Mo., 394 S.W.2d 364; State v. Arnold, Mo., 419 S.W.2d 59 and State v. Parker, Mo., 413 S.W.2d 489. For the reasons indicated the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.