STATE of Missouri, Respondent,

v.

Phillip K. HARRIS, Appellant.

No. 50637.

Supreme Court of Missouri,

Division No. 2.

Oct. 12, 1964.

Thomas F. Eagleton, Atty. Gen., Louis C. DeFeo, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

Phillip K. Harris, pro se.

BARRETT, Commissioner.

On January 18, 1956, when Louise Okee, now described by the appellant Phillip K. Harris as "his lady friend," attempted to terminate their illicit relationship (he was then married and the father of seven children), he beat her to death with "a steel car jack." The circumstances in which the appellant Harris beat Louise to death, an irrefutable fact that he did not deny either then or now, were such that he was first charged with murder in the first degree. Subsequently an amended information was filed charging the appellant with murder in the second degree, whereupon, after advising with court-appointed counsel (two very competent lawyers), he entered a plea of

guilty and was sentenced to fifty years' imprisonment. Seven years later, December 13, 1963, the appellant instituted this rather unique two-pronged proceeding to vacate the 1956 sentence and to permit him to withdraw his original plea of guilty. Essentially the proceeding is one to vacate the sentence under rule 27.26, V.A.M.R. on the ground or for the reason that there was "manifest injustice" in the acceptance of his plea of guilty (Sup.Ct. Rule 27.25) in 1956 and therefore, he urges, the judgment of conviction on his plea of guilty should now be set aside. The trial court summarily denied the motion and Harris has appealed.

The appellant's complaints are that he was "deprived of substantive procedural due process of law" in that by reason of his comparative illiteracy (a third grade education) there was no "thorough determination of appellant's capabilities to adequately and clearly understand the law of the case." This general abstraction means, so he says, that "he was not advised of the various defenses available to him." But in this connection he is not speaking of the defenses to the charge of second degree murder, he first objects that the charge of first degree murder was reduced to second degree by striking from the information the word "deliberately." He intimates that, unknown to him, the change in the information resulted from "some kind of agreement between defense counsel and the prosecution." Therefore, it is said, that he had a right to know but was not advised that he was not pleading guilty to murder in the first degree. In this connection he urges that he should have been advised of the reduction in the degree of the offense, "because there are far more defenses in first degree murder than in a second degree one." As to these rights he says that "no one advised him that he forfeited more rights by pleading guilty than he gained by [not] so pleading: his act could possibly have been due to temporary insanity; to provocation, to fear of immediate danger; no one advised appellant he could have relied on the doctrine

of self-defense; that there could have been a jury finding of manslaughter, a verdict for which a jury could have found." And finally it is stated that "the court did not advise appellant what charge he was being sentenced for. In effect, he was not lawfully advised of the nature of the charge he was being sentenced for." It is urged that these circumstances and this case fall within and are governed by State v. Williams, Mo., 361 S.W.2d 772 and Williams v. Kaiser (1944), 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398, and that as in the Williams case the present judgment dismissing appellant's motion should be reversed.

But the insuperable difficulty with the appellant's position, both here and in the trial court, is that his motion, the record and the case are not comparable to those cases. Unfortunately for the appellant and the allegations of his motion a record was carefully made and preserved when he entered his plea of guilty in 1956 and that record is of course a part of this proceeding. State v. King, Mo., 380 S.W.2d 370. And the court in which he was convicted in the first instance, and in which he necessarily filed this motion, is not bound to accept as true allegations which the files and records of his original case show to be erroneous or untrue. State v. Ninemires, Mo., 306 S.W. 2d 527, 531.

In any event, the official transcript, properly authenticated and filed here, contains these recitals and establishes these facts: The original information charging the appellant with murder in the first degree was filed on January 19, 1956. And the record recites that "thereafter," on January 31, 1956, "Information is read to defendant charging the defendant with murder in the first degree." The record entry then recites that attorneys Ray L. Shubert and George F. Sweitzer were appointed to represent appellant and he was "advised that he would have a reasonable time in which to confer with his attorneys." Thirty days later, on February 18, 1956, the record recites that the prosecuting attorney files an

amended information "reducing charge to murder in the second degree." Next, the record entry recites that "Defendant's counsel consent to reduction of charge *and amended information is read to defendant.* Defendant enters a plea of guilty as charged of murder in the second degree."

█ If these bare record entries are not sufficient of themselves to dispose of the appellant's motion it further appears from the official transcript that "At the time of the entry of plea of guilty and said sentence the following occurred in open Court." First, the court directly addressed the defendant and established his name. Next the court addressed the prosecuting attorney and specifically inquired whether he was filing an amended information reducing the charge from first to second degree murder. Then the court addressed counsel and asked whether they consented to the reduction of the charge. Upon receiving an affirmative answer the court said, *"Mr. Harris, at this time I am going to read you this amended information that has just been filed."* And the court proceeded to read the information to the defendant, then the court asked the defendant how far he got in school (third grade) and whether he could read and write (He answered, "No."). Then the court asked the appellant whether he understood the charge and receiving the answer "I think so," the Court said, "I'll explain it as clearly as possible." Then the court told him that he was charged with killing Louise Okee with a steel car jack. The defendant said that he understood that. And then the court asked Harris whether he had conferred with counsel and whether they had explained "the range of punishment this charge will carry." And even though receiving an affirmative answer the court explained the range of punishment and then the appellant said, "I understand this. I don't quite understand it, but I can go along with this. I don't know much about the law." The court replied, "I don't expect you to. You know this type of crime is a minimum of ten years to a term of years

which could be 99 years. Do you understand that?" Appellant replied, "Yes." Then the court stated and inquired whether after saying he understood the charge and after conferring with counsel "Do you enter a plea of guilty or not guilty as charged?" Defendant responded, "Guilty." The judge, "Are you entering a plea of guilty?" Defendant, "Yes." The court, "Have you been induced by any threats or promises to enter this plea of guilty?" Defendant, "I have not." The Court, "You have not. Are you entering this plea of guilty solely because you understand the nature of this charge and you understand the facts and you are guilty of this charge?" Defendant, "The sole reason."

The prosecuting attorney recommended a punishment of 50 years' imprisonment. The court called on appellant's counsel, Mr. Shubert, and he stated that he and his co-counsel had also advised the appellant of the nature of the charge and the range of punishment. And, counsel said, "We have advised him, of course, of his rights to have a trial by jury if he so chose or to plead guilty if he chose. We left the matter up to the defendant himself and explained all his rights under the Constitution of Missouri and the Constitution of the United States. *He told us yesterday afternoon he wanted to enter a plea of guilty after explaining to him the charge that has now been amended by the Prosecuting Attorney to the 2nd degree charge.* We also explained that whatever the Prosecuting Attorney recommended, this Court, of course, was not bound by it." Mr. Shubert's co-counsel then made a brief statement of the circumstances of the murder, gave a brief account of appellant's life and concluded with a plea "that the Court temper justice with mercy considering his plight and background."

█ This is not to say that questions of fact may not be made or may not arise upon motions to withdraw pleas of guilty or motions to vacate sentences. But it is obvious from the motion here and the solemn record made in 1956 that there is no disputed fact. In this case, unlike in Williams v. Kaiser,

the court did not accept Harris' plea of guilty without "questioning, cautioning, or saying anything to the defendant or in any way asking if he assented to the plea." Also the case is unlike State v. Williams in that here there is no circumstance from which it is a permissible inference that Harris was misled or "that this could be the result of what was done under the circumstances of this case." 361 S.W.2d l. c. 775. As to the withdrawal of the plea of guilty the appellant does not in fact claim that he was not guilty of murder in the second degree (he claims that he may have had defenses to a charge of murder in the first degree that were not available to him under a charge of second degree murder), there is not in fact a claim that he was misled by the trial judge. At best his claim is that he did not know or fully appreciate, not necessarily the consequences of a plea of guilty, but rather that he did not realize that he could be sentenced to fifty years' imprisonment and that alone is not a good and sufficient reason or basis for finding that after the lapse of seven years the trial court erred in refusing to permit the withdrawal of a plea of guilty. State v. Kellar, 332 Mo. 62, 55 S.W.2d 969. Insofar as the motion is concerned with the vacation of the sentence, there is no basis for a claim that there was a promise or an understanding that a particular recommendation would be made and followed. And the statements or innuendoes of lack of "effective legal services" are not supported by the record and as a matter of fact concern "strategy" in the handling of a very serious criminal case rather than the justice and propriety of the proceedings upon a plea of guilty. State v. Freedman, Mo., 282 S.W.2d 576. Thus, in short, in the trial court and in this court, upon the record in the original proceedings and upon the face of the motion the appellant is entitled to no relief (State v. Ninemires, supra; State v. Freedman, supra; State v. McDonald, Mo., 343 S.W.2d 68) and the judgment is therefore affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.