STATE of Missouri, Respondent,

v.

James C. BLAYLOCK, Jr., Appellant.

No. 51341.

Supreme Court of Missouri,
Division No. 1.

Oct. 11, 1965.

Norman H. Anderson, Atty. Gen., Richard C. Ashby, Asst. Atty. Gen., Jefferson City, for respondent.

Fred Leicht, Jr., St. Louis, for appellant.

HYDE, Presiding Judge.

Appeal from order denying petitioner's motion to withdraw plea of guilty and to vacate sentence and judgment (Crim. Rules 27.25, 27.26) considered as proceeding to vacate sentence under Rule 27.26. See State v. Harris, Mo.Sup., 382 S.W.2d 642, 643.

Petitioner was arrested on June 16, 1960 for killing with a knife, on that day, Rosie Lee Neal who had previously lived with him but had left him to live with another man. Petitioner was indicted for first degree murder and arraigned July 8, 1960 (coroner's inquest was held prior to that date) at which time Joseph Noskay of the public defender office appeared and entered a plea of not guilty for him. Petitioner desired to be represented by Morris Shenker who set a fee of $1,000.00 and on July 21, 1960, a stepbrother of petitioner paid Mr. Shenker $300.00. Thereafter, Laurence J. Lee of Mr. Shenker's office came to see petitioner and took a statement from him. There was some kind of a hearing (apparently about bond) attended by Mr. Lee or someone from the Shenker office. Previously, Mr. Godfrey of the public defender office had interviewed petitioner. Trial was set for August 8, 1960, and on August 5, 1960, petitioner said he saw Mr. Lee "in Dock" and "Talked to him through the screen"; and that "he said he would be in court at my trial." As to this Mr. Lee said: "I may have, but I don't recall it though." However, no one from Mr. Shenker's office appeared on August 8, 1960 because the balance of the $1,000.00 fee had not been paid.

$150.00 of this fee was returned to defendant's stepbrother on September 21, 1961.

Mr. Noskay did appear on August 8, 1960 and testified as to the situation, as follows:

"Q   On August 8 did the petitioner James Blaylock, did he, at any time before the plea was entered, inform you that an attorney from the office of Morris Shenker was to represent him in this matter?

"A   He had.

"Q   And what was your response to this?

"A   We told him that we had discussed this matter with Mr. Shenker and as the fee had not been fully paid, Mr. Shenker's office decided not to represent him.

"Q   And by talking to him, the office of Mr. Shenker, does this mean that you actually called the offices of Shenker on that morning?

"A   I'm not sure whether we called or discussed it with Mr. Lee personally.

"Q   With Mr. Lee?

"A   Yes, sir.

"Q   And at that time what did he tell you?

"A   He told us that he did not represent the defendant.

"Q   And did you convey this information to the defendant?

"A   I did.

"Q   And what was the defendant's response at that time?

"A   He made no response at all.

"Q   He did not press the fact that someone from Shenker's office was to represent him?

"A   There was no discussion about it, as far as I can remember, but when we told

him Mr. Shenker's office had refused to represent him, then he was resigned to the situation.

"Q And he, willingly accepted the advice that you gave him as to the plea of guilty?
"A He did.

"Q And again I ask, did you explain all the possible ramifications of such a plea to him at that time?

"A I did.

"Q And you were satisfied that he understood what such a plea would mean?
"A I am satisfied and I was at that time."

Mr. Noskay also testified that before August 8, 1960 Mr. Godfrey had discussed with petitioner the possibility of entering a plea of guilty; and that he informed petitioner of the possible penalties and of his right to trial by jury. Just what either Mr. Noskay or Mr. Godfrey specifically told petitioner does not appear in the transcript. Petitioner in answers to interrogatories denied that Mr. Noskay explained the possible consequences of a plea of guilty to murder first degree and said: "Mr. Noskay simply told me to tell the judge I did it." Petitioner also said he told Mr. Noskay that an attorney from Mr. Shenker's office had been retained to represent him and that his stepbrother had paid Mr. Shenker a $300.00 retainer fee; but that Mr. Noskay said he had called Mr. Shenker's office and no one knew anything about it; and that Mr. Noskay did not advise him he could attempt to obtain a continuance until Mr. Shenker's office could be contacted. Petitioner (37 years old, with 6th grade education) further said he never discussed the facts of the crime with Mr. Noskay, never voluntarily consented to having Mr. Noskay represent him on August 8, 1960.

The proceedings on August 8, 1960, were as follows:

"THE COURT: This is cause No. 1027–I one James Clifton Blaylock, Jr. is charged with Murder in the First Degree, and is represented by Mr. Joseph Noskay.

"You may proceed, Mr. Noskay.

"MR. NOSKAY: In this case the defendant withdraws his former plea of not guilty and enters a plea of guilty as charged.

"THE COURT: What did this man do, Mr. Draper?"

Mr. Draper, Assistant Circuit Attorney, then gave the State's version of the facts of the case and made a recommendation of life imprisonment.

All that thereafter occurred was as follows:

"THE COURT: You did do this, did you?

"THE DEFENDANT: Yes.

"THE COURT: In Cause No. 1027–I the Court hereby accepts your plea of guilty and your admission, James Clifton Blaylock, of Murder in the First Degree ond on your plea of guilty and your admission you are sentenced to life imprisonment."

Petitioner filed motion to vacate October 10, 1962, which was denied without a hearing October 31, 1962. The present motion filed November 29, 1963, on which a hearing was held on January 22, 1965, was denied on February 3, 1965 with findings as follows:

"The Court finds that the defendant had never completed a contract of employment with Morris Shenker and, therefore, Morris Shenker was never the defendant's lawyer, and Mr. Noskay was appointed by the Court, after his office made a complete investigation of the circumstances of the defendant's arrest. The defendant understood the consequences of his plea of guilty and his admission before the Court. Therefore, the defendant is not entitled to any relief as provided by law."

In State v. Williams, Mo.Sup., 361 S.W.2d 772, 773, we said: "Our Rule 25.04 (as does Federal Rule 11) provides: 'The court may

refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.' This plea was accepted by the court without questioning, cautioning, or saying anything to the defendant or in any way asking if he assented to the plea. The only inquiry made by the court was to defendant's counsel, saying: 'You have explained to the defendant the possibilities of punishment that can prevail. It can be death, it can be life imprisonment or less? Mr. McIlrath: That's right.'" There was also an equivocal plea in that case and other circumstances from which we held on appeal that manifest injustice appeared within the meaning of Rule 27.25 and reversed the judgment. However, we pointed out therein: "'The guiding rules are that a plea of guilty is but a confession in open court. Like a confession out of court it should be received with caution. It should never be received unless it is freely and voluntarily made.'"

The Williams case was decided on an appeal but such an issue has been decided in the Federal courts on a motion to vacate under Sec. 2255, Title 28, US Code, the same remedy as provided by our Rule 27.26. In United States v. Davis, USCA 7, 212 F.2d 264, 267, an order denying a motion to vacate was reversed; the motion alleging the plea of guilty was not made voluntarily with an understanding of the nature of the charge. The Court stated the requirements of Federal Rule 11, and said: "This rule is stated in mandatory language and the court is not relieved of the duty which it imposes solely because the accused, as here, is represented by counsel of his choice." The Court further said of the transcript therein: "It does not show that the indictment was read aloud nor the substance of its contents stated in the defendant's presence. He was not asked whether he understood with what he was charged, nor did the court make an inquiry of any kind to ascertain whether the defendant was correctly advised of the nature of the indictment against him. * * *

We do not mean to say that a District Court must in every case follow a particular ritual in order to comply with Rule 11. A brief discussion with the defendant regarding the nature of the charges may normally be the simplest and most direct means of ascertaining the state of his knowledge. Or there may be other circumstances from which it is evident that the defendant has the requisite understanding. See Michener v. United States, 8 Cir., 181 F.2d 911, 918; United States v. Denniston, 2 Cir., 89 F.2d 696, 698, 110 A.L.R. 1296. Whatever the means employed, a fair compliance with the Supreme Court rule would insure that the defendant has the knowledge and understanding essential to a valid plea." See also United States v. Diggs, (USCA 6) 304 F.2d 929, 930, and cases cited; Domenica v. United States, (USCA 1) 292 F.2d 483, 485; Julian v. United States, (USCA 6) 236 F.2d 155, 158.

In this case, the transcript does not show any discussion with or inquiry of petitioner by the Judge except the one leading question after the recital of facts by the Assistant Circuit Attorney, namely: "You did do this, did you?" Moreover, the transcript shows no inquiry at all by the Judge of Mr. Noskay as to what information or explanation of the charge and the plea he entered had been given petitioner. Compare the thorough, careful discussion and explanation of the Judge in State v. Harris, supra, (382 S.W.2d 1. c. 644–645) which we approved. The finding that no contract was completed with Mr. Shenker does not justify the overruling of petitioner's motion but instead indicates the need for a thorough inquiry by the court as to the understanding of the plea and its consequences by petitioner and the voluntariness of his consent to its entry by a representative of the public defender's office who appeared in court in place of the employed counsel expected by petitioner. Our conclusion is that what appears in the transcript is not sufficient to show petitioner "understood the consequences of his plea of guilty." Even the statement of facts made by the

Assistant Circuit Attorney did not conclusively compel a finding of first degree murder but possibly could have been a second degree murder situation.

The order denying the motion to vacate is reversed and the cause remanded.

All concur.