Ralph WOODY, Appellant,

v.

STATE of Missouri, Respondent.

No. 54327.

Supreme Court of Missouri,
Division No. 2.

Oct. 13, 1969.

James E. Reeves, Ward & Reeves, Caruthersville, for petitioner-appellant.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

PRITCHARD, Commissioner.

This is a motion to vacate, set aside or correct a sentence under Supreme Court Rule 27.26, V.A.M.R.

On February 20, 1968, with counsel present, appellant pleaded guilty to a charge of receiving stolen property. Counsel then stated to the court that appellant had the nature of the charge explained to him, and waived the formal reading of the charges. Appellant affirmed counsel's statement, and stated to the court that he understood the charge, that he had a right to trial by jury at which counsel would represent him. Upon inquiry by the court the state recommended a sentence of ten years and a parole without supervision. Counsel stated that he thought ten years was a long time for appellant "to walk the straight and narrow," but that he was in no position to quibble since the state had recommended a parole. Further discussion was had as to whether appellant could live up to a parole, he stating that he could, and he was asked if he had any legal cause why the sentence should not then be passed. Appellant stated, "No, sir." "The Court: You are sentenced to ten years in the Department of Corrections and granted a parole without supervision. Don't get into anything else."

The next proceedings were for parole revocation on May 15, 1968. On that same day Mr. Cyril M. Hendricks was appointed, and he immediately asked for a continuance of the hearing upon grounds that appellant had filed a Writ of Habeas Corpus in the United States District Court in San Francisco, and a Complaint in the Department of Justice alleging violation of the Civil Rights Act, and that he would like time to have those proceedings held before going ahead with the parole revocation hearing. Counsel also stated that appellant had not had a

conference with his mother, who had told him that she would provide him with employed and competent legal counsel. Counsel also stated he needed more time to prepare for the hearing.

The motion for continuance was overruled. An oral motion under Supreme Court Rule 27.26, V.A.M.R., to vacate the sentence of ten years, was overruled as being not timely made (that it was made too early, before the parole was revoked). The prosecuting attorney then stated that appellant had failed to appear in response to a subpoena served upon him in two cases in the Magistrate Court on February 21, 1968, the magistrate record showing: "Witness for State, Ralph Woody duly subpoenaed fails to appear and is found in Contempt of Court." The prosecuting attorney further stated that the (Magistrate) Court adjourned about an hour to locate the witness, which was not done, and the cases pending against the defendants were dismissed. Appellant was located in Arizona and was subsequently extradited by Dunklin County, "but the purpose of having here today is on this parole revocation is by the court records which shows completely that this man was subpoenaed and he failed to appear and was found in Contempt of Court, and this is definitely a violation of his parole."

Appellant stated to the court that the prosecuting attorney told him the day before the Magistrate hearing that the cases would be dismissed because "Judge Hawkins didn't like me one bit" and he thought there was no use appearing if they were going to be dismissed. The prosecuting attorney then stated that at the time of the conversation he told appellant that he wanted him to be in court, that he had been subpoenaed and if he did not obey it he would make every effort to have his parole revoked, and that the outcome of the cases would not affect his parole one way or the other.

The court then stated to appellant that he had disobeyed the orders of the court, in

that within two days he had violated the terms, and that his parole was revoked.

The motion asserts many detailed grounds for relief, but the points here presented on appeal with respect to the motion are these: I. Appellant's rights to counsel under the Sixth and Fourteenth Amendments were denied: (a) Counsel was appointed only minutes before the parole revocation hearing, and was denied a continuance and an opportunity to prepare his defense; (b) although counsel was requested, none was appointed at the Magistrate hearing, "and actual prejudice resulted from the failure to appoint counsel in this critical stage of the proceedings"; (c) appellant was interrogated by the prosecuting attorney and deputy sheriff in the absence of counsel, during which incriminating statements were made which coerced his plea of guilty; and (d) "In the absence of counsel the state negotiated a plea of guilty and bargained with petitioner that if he would plead guilty he would be given ten years and placed on parole."

Under Point II, appellant asserts that the court failed affirmatively to ascertain that his plea of guilty was voluntary, and that he understood the same, in violation of Supreme Court Rule 25.04, V.A.M.R. Point III attacks the court's finding that his plea of guilty was fairly, intelligently and voluntarily made while he was sane and not under the influence of drugs was erroneous, against the weight of the evidence and not supported by substantial evidence because the evidence clearly shows that he was suffering from a mental disease, withdrawal from drug addiction "and was made because of duress and lack of understanding." Lastly, by Point IV it is urged that the court erred in revoking appellant's parole because there was no substantial basis or reason for such revocation resulting in a denial of a fair hearing and due process of law.

An evidentiary hearing was had upon appellant's motion at which he was present with counsel and testified as follows: He is presently under a ten-year sentence in the Department of Corrections. Just prior to sentencing, which was on February 22, 1968, he was in the county jail in Caruthersville, having been picked up and confined on the original charge on January 25 or 26, 1968. During the course of his confinement he was interrogated by the prosecuting attorney, the sheriff and the deputies (Officer Wesley Mayo). Although he had requested an attorney in the event of interrogation he did not have the benefit of counsel and there was no lawyer representing him. As a result of the interrogations appellant made (incriminating) statements concerning the facts and circumstances of the crime for which he was charged. At the time of his entry of the plea of guilty he made an agreement with the prosecuting attorney that his revealing where the stolen property was located was in return for a parole. There was no understanding, agreement or statement that appellant's parole would be revoked if he did not testify against his codefendants. Although requested of the Magistrate, no attorney represented appellant at the preliminary hearing, which he asked be waived, and later (in Circuit Court) appellant learned that what he thought was a stealing charge had been changed to receiving stolen property. He had no notice that the original complaint of stealing was amended to charge receiving stolen property, before which, on his first appearance in Magistrate Court, he had requested an attorney.

Offered and received into evidence was Exhibit 1, a report concerning appellant by licensed physicians appointed by the Probate Court of Pemiscot County. Doctors O. W. Cook and C. F. Cain reported on November 22, 1955, that they had examined him, found that he, as a proposed patient, was suffering from a psychiatric or other disease which substantially impaired his mental health, with a diagnosis of "manic depressive"; and that he was in need of custody care and treatment in a hospital for the mentally ill: "Yes, at

least for observation and diagnosis." It was stated to be "doubtful" that appellant be permitted to be unrestrained. Exhibit 2 is an order committing appellant to State Hospital No. 4, Farmington, Missouri. No further evidence was offered or received as to the results of the 1955 hospitalization, or any diagnosis therefrom, but appellant testified that at the time of the instant charge and his plea of guilty he was still suffering from that illness. After being locked in jail about the second day he started having hallucinations. He had been on amphetamine, barbiturate drugs for some time, and had taken drugs in the jail at the time he entered his plea of guilty. He did not understand the nature of the charge against him at the time he entered his plea. "The condition that I was in, it didn't seem like anything mattered, and I had a fear. I seen, or I begin to realize something, or some of the mistakes that I had made in the case, and I had a fear of going to prison. I had a fear of everyone, and a fear that I might be killed; that everyone was against me; that I would do anything at that time to try to protect my own life." For these enumerated reasons he did not understand the nature and consequences of his act in pleading guilty.

As a result of the interrogations of the prosecutor and Deputy Mayo, which were quite often, appellant admitted his guilt and gave them directions where the evidence (property alleged to have been stolen) could be found. Appellant never waived his right of counsel during the course of the interrogations. Mr. Fowlkes was appointed to represent him just before the Circuit Court proceedings on the charge of receiving stolen property.

After he entered his plea and before the preliminary hearing of Francisco (charged with burglary), appellant had a discussion with Mr. Taylor, the Prosecuting Attorney, about testifying against Francisco. The Prosecuting Attorney advised him that the Magistrate Court hearing was coming up, that he was going to

rely upon him as a witness, and if he didn't testify his parole would be revoked. On the parole revocation hearing, Mr. Hendricks was appointed to represent appellant just a few minutes before the hearing, appellant felt that they had inadequate time to go over the case, it being based on contempt of court for failure to appear and testify against the codefendants in the case; that he had never been served any "service" on this charge (which he could possibly have shown to be not a direct contempt in the face of the court), and he was entitled to a hearing on indirect contempt.

On cross-examination, appellant testified that he was never directly informed and did not know that he was going to be asked to testify in any of the Magistrate Court cases. (The Sheriff's return on the subpoena issued in the Magistrate Court shows service upon appellant and one Hoyt Hester.) Appellant has some knowledge of criminal law. He first testified that at the time he did not know that he had a right to remain silent when questioned by a police officer. This question was asked him: "You were advised that you had a right to remain silent, and that anything you said could and would be used against you in a court of law, and that you had a right to an attorney? A. I was advised under the Miranda Rule." This was when he was first arrested, and he did not recall being advised, upon interrogation, by the prosecuting attorney under the Miranda Rule.

The state placed in evidence Exhibit C which consists of the docket entries of the Circuit Court of Scott County on a charge of assault with intent to maim against appellant in 1964. Appellant then appeared with counsel, and his motion for pretrial mental examination was sustained, and he was on October 14, 1964 ordered delivered to State Hospital No. 1 at Fulton for an examination. State's Exhibit A is a copy of the report of such mental examination dated December 1, 1964. Appellant's antisocial history was recited, and it was con-

cluded in diagnosis: "Sociopathic Personality, Antisocial Type. We are not able to demonstrate psychosis at this time." The findings were that he had no mental illness or defect within the meaning of Section 552.020; he had the capacity to understand the proceedings against him and can assist in his defense; and he did know and appreciate the nature, quality and wrongfulness of his conduct. According to State's Exhibit B, appellant was tried by a jury, and was sentenced from February 11, 1965, to five years imprisonment.

John R. Fowlkes, who represented appellant at the time of his plea of guilty, testified that he talked to him on two or three occasions, "and he appeared to have all of his facilities, to me." Appellant did not appear to be under the influence of drugs at the times he talked to him. The matter of appellant being called as a witness in some companion cases was discussed with him. Counsel's plan was to go with appellant on the court's law day and enter a plea of guilty in his behalf, it being understood between appellant and the prosecutor that a sentence of ten years and a bench parole would be recommended. Counsel advised appellant of his right to trial by jury and having counsel. Appellant, having negotiated the "parole deal" himself, asked Mr. Fowlkes' opinion about it, and counsel advised him, "If you can swing it, that sounds pretty good." Counsel's recollection was that appellant was to testify in the cases of Francisco and Burgess in the Magistrate Court, but he did not recall that such was a condition of parole.

The record entry of the court order granting a parole of February 20, 1968, was conditional: "that the said defendant conducts himself as a good citizen and leads an honest, upright, temperate, and industrious life and obeys the laws and ordinances of every State, and of the United States and its possessions."

The argument under Point I(A) is "there was not adequate time to even discuss the case between the lawyer and client, much less prepare the defense for the hearing." Appellant's cited case of Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336, is inapplicable because that case involved only the failure to provide counsel on parole revocation hearings where each petitioner had been placed on probation with *deferred sentences* which sentences were imposed at the close of the revocation hearings. Following Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690, the court held that *sentencing* is a critical stage of the proceeding wherein the right to counsel applies. Here appellant had been previously sentenced and counsel *was* appointed in the revocation proceedings, and the sole question is whether the court erred to the prejudice of appellant in denying counsel's requested continuance because he needed more time to prepare for the hearing. In this connection, the record shows that upon appointment of counsel a conference was had between him and appellant, although the time therefor is not shown. In his findings the trial court concluded that adequate time was allowed counsel to prepare for the parole revocation hearing. The issue was simple: whether appellant had conducted himself as a good citizen and had obeyed the laws and ordinances of every state, and of the United States. Neither counsel nor appellant, prior to the hearing, indicated that witnesses or evidence would need to be procured to meet the matter of whether the parole should be revoked. On this appeal no suggestion is made as to any prejudice that occurred by reason of denial of the motion for continuance. It is not pointed out how counsel could have been more effective had additional time been granted. The matter of the grant of a judicial parole or probation is controlled by statute, as is the revocation thereof. Sections 549.061, 549.101, RSMo 1959, V.A.M.S. (as amended, Laws 1965). The latter section provides in part: "The court may in its discretion with or without hearing, order the probation or parole re-

voked and direct that the sentence theretofore imposed be commenced and order execution thereof or in the event imposition of sentence was suspended the court may pronounce sentence and order execution thereof." See State v. Small, Mo., 386 S.W.2d 379. No arbitrary or capricious action or abuse of discretion of the trial court appears or is urged by appellant. The basis for the revocation of parole is failure to appear in Magistrate Court when lawfully subpoenaed as a witness in a pending criminal case. Such failure shows that appellant was not conducting himself as a good citizen and obeying the laws of this state. See §§ 545.340, 491.100 et seq., RSMo 1959, V.A.M.S., relating to the compulsory attendance of witnesses, and penalties for failure to obey subpoenas. It abundantly appears here that such a subpoena was issued and served upon appellant, and he failed to obey the same. This disposes of appellant's Point IV that there was no substantial basis or reason for the revocation of parole, and appellant was given the opportunity to explain away the accusation that he failed to obey the subpoena. State v. Brantley, Mo., 353 S.W.2d 793, 797 [4].

■ The record affirmatively shows that appellant waived his preliminary hearing and was bound over to Circuit Court after the prosecuting attorney filed his amended complaint. Appellant was fully advised of the (amended) charge of receiving stolen property and his right to have a preliminary examination. Of course nothing happened in that court which was used to appellant's prejudice in later proceedings. There was thus no constitutional error in not appointing counsel for appellant in Magistrate Court. White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, is inapplicable. See discussion of that case and other similar cases in State v. Smith, Mo., 411 S.W. 2d 208, 209, following State v. Gagallarritti, Mo., 377 S.W.2d 298, 301. See also State v. Turley, Banc, Mo., 442 S.W.2d 75; State v. Peck, Mo., 429 S.W.2d 247; and State v. Pedicord, Mo., 437 S.W.2d 87, 90, where it was held that all defects concerning a preliminary hearing are deemed waived where a defendant pleads guilty later in Circuit Court. There is no merit in Point I(B).

■ Concerning Point I(C), appellant conceded in his testimony that the Miranda warnings were given prior to his being interrogated in the county jail by the deputy sheriff and the prosecuting attorney. No statement made by him was considered by the trial court in receiving his guilty plea. He argues that the interrogations coerced his guilty plea. Deputy Sheriff Mayo denied that he had interrogated appellant at 2:30 a.m. as claimed by him and as testified to by witnesses Lackey and Craig who were inmates of the county jail at the time. Mayo testifed that on one Sunday evening appellant asked to talk to him and told him where "the boys" who had stolen the tires had hidden them. Appellant then said he thought it would make it a whole lot easier on him if he would tell where they (the tires) were. It was for the trial court to believe whether under all the facts and circumstances appellant's plea of guilty was coerced by interrogation as to unconstitutionally taint it. The court could find that the Miranda warnings were given, and that any incriminating statements given were of appellant's own volition for the purpose of making it easier on himself.

■ Appellant claims that the state unconstitutionally bargained for his plea of guilty before the appointment of counsel for him. His counsel testified that "the deal" of a guilty plea with a ten-year sentence and a bench parole had already been worked out. Appellant did consult his counsel about it apparently before he accepted it. His counsel explained his right to trial by jury and representation by counsel during same. Appellant knew the alternatives, and it was he who made the decision after talking to his counsel who expressed to him an opinion that he had made a very attractive deal with the state, considering his record and other matters. The court did in fact follow the state's recom-

mendation, imposing a ten-year sentence and granting parole without supervision. Appellant was not overreached or promised anything which did not materialize within appellant's cited case of Anderson v. State of North Carolina (D.C., W.D.), 221 F. Supp. 930. If appellant was dissatisfied with the bargain, he had opportunity not to accept it and have a trial by jury.

The claim is made that the court did not ascertain, within the provisions of Supreme Court Rule 25.04, V.A.M.R., that appellant's plea of guilty was made intelligently and voluntarily. The record does not support appellant's contention. He was present in court; his counsel stated that he had the nature of the charge explained to him; the court asked if he understood the charge, to which appellant answered, "Yes, sir." He answered in the affirmative that his counsel had explained that he had a right to trial by jury and that counsel would represent him. Appellant had previously worked out his plea and a bench parole *without supervision. He understood that he would thereafter have to "go straight."* This record shows that appellant understood his plea (having some knowledge of criminal procedure) and voluntarily entered the same. The inquiries here by the court, counsel's statements, and appellant's responses go much farther than those in State v. Blaylock, Mo., 394 S.W.2d 364, and State v. Williams, Mo., 361 S.W.2d 772 (an equivocal plea).

Appellant testified that he was under the influence of drugs at the time of his plea. He also claims that he was not sane at such time. There was contrary evidence that he seemed normal at the time. The hospital records of 1955, although tending to show some mental disorder, are not conclusive in view of the 1964 hospitalization, findings and conclusions tending to show that appellant had no mental disease or defect. There was a sufficiency of evidence for the trial court to find, as it did, that appellant was sane and not under the influence of drugs at the time of his plea of guilty.

Upon a review of the whole of the evidence the trial court's findings, conclusions and order overruling the motion are not clearly erroneous within Supreme Court Rule 27.26(j).

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.