Robert Eugene **DOEPKE**, Appellant,

v.

**STATE** of Missouri, Respondent.

No. 55982.

Supreme Court of Missouri, Division No. 1.

April 12, 1971.

**508**

Richard H. Edwards, Clayton, for appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from denial, after evidentiary hearing, of motions under Criminal Rules 27.25 and 27.26, V.A.M.R., to withdraw pleas of guilty and to vacate sentences and judgments. See State v. Harris, Mo., 382

S.W.2d 642, 643; State v. Blaylock, Mo., 394 S.W.2d 364, 365.

On March 8, 1968, Robert Eugene Doepke withdrew not guilty pleas and entered pleas of guilty to felony charges contained in six separate informations, and the court pronounced sentences as follows:

No. 287822, burglary and stealing, "ten years";

No. 286266, burglary and stealing, "ten years * * * to run concurrent with the sentence previously imposed * * * in Cause Number 287822";

No. 288745, operating motor vehicle without owner's consent, "five years * * * to run concurrent with the previous sentence in Cause Number 287822";

No. 287824, stealing motor vehicle, "five years * * * to run concurrent with Cause Number 287822";

No. 287823, carrying concealed weapon, "five years * * * to run concurrent with Cause Number 287822";

No. 290088, burglary, second degree, "five years * * * to run concurrent with the sentence imposed * * * in Cause· Number 287822."

Following pronouncement of these sentences the court ordered that defendant "be placed on probation, to be remanded to the United States Marshall on the condition that he be prosecuted on a federal charge now pending; that if the federal charge is not prosecuted or if upon prosecution of the federal charge there is a finding of not guilty * * * or if upon a finding of guilty by the federal courts to the pending federal charge, if that sentence is less than ten years, then at the conclusion of that sentence the defendant * * * be returned to the Department of Criminal Correction, State of Missouri, to serve the sentence imposed by this Court."

Contrary to the court's in-court pronouncements, the judgment entries in Nos.

286266 and 287822 purport to sentence defendant to concurrent terms of ten years for burglary and ten years for stealing, to run concurrently with each other; and the record entries of the guilty pleas recite: "Court orders execution of sentence stayed provided that defendant is sentenced to ten years on federal charge now pending against defendant. Defendant is remanded to custody of the federal authorities."

On May 3, 1968, the court caused "Judgment, Sentence and Revocation of Stay of Execution" to be entered in each of the six cases; and, on May 20, 1968, following his confinement in the penitentiary, defendant, through the public defender, filed a motion "for leave to withdraw his former pleas of guilty in the above causes and to enter pleas of not guilty, on the grounds that such pleas were not voluntarily made."

On July 25, 1968, defendant, through the public defender, withdrew his "Motion for Leave to Withdraw Pleas of Guilty."

On August 2, 1968, the public defender withdrew as counsel for defendant; Mr. Richard Edwards, present counsel, was appointed for defendant; and the court, by memorandum of record, noted that defendant's sentences were "executed without a hearing," and ordered a hearing for September 19, 1968, "to determine whether or not the sentence[s] should now be executed."

There was no hearing on September 19, 1968, and, on November 13, 1969, defendant filed his "Alternative Motions to Set Aside Probation Revocation or to Grant Defendant a Hearing on said Revocation or to Set Aside Defendant's Former Plea[s] of Guilty."

On February 6, 1970, an evidentiary hearing was accorded defendant on his alternative motions. In addition to the foregoing chronology and proceedings, the record also contains the proceedings surrounding entry of the pleas of guilty and testimony from defendant and his lawyers.

The record made March 8, 1968, shows that on each plea virtually the same colloquy occurred between court, counsel, and defendant, and the following is typical:

"THE COURT: You are Robert Eugene Doepke? MR. DOEPKE: Yes, sir.

"MR. KIMBRELL: At this time, Your Honor, the defendant requests leave to withdraw his former plea of not guilty to the charge of burglary second degree and stealing in cause number 287822 and to enter a plea of guilty to the charge.

"THE COURT: Before I accept his plea of guilty let me be sure he understands. You are Robert Eugene Doepke? MR. DOEPKE: Yes, sir. THE COURT: Your lawyer has just entered a plea of guilty in your behalf; by so doing, Mr. Doepke, you will not be given a trial and the only thing remaining to be done is to impose sentence upon you. MR. DOEPKE: Yes, sir.

"THE COURT: The law gives you a right to be tried by jury, and the jury may find you not guilty as well as guilty. MR. DOEPKE: Yes, sir. THE COURT: But by pleading guilty you will not be given a trial; do you understand that? MR. DOEPKE: Yes, sir.

"THE COURT: Have you had enough time to talk with your lawyer about entering this plea? MR. DOEPKE: Yes, sir. THE COURT: Have you had enough time to talk with a relative or friend if you wish? MR. DOEPKE: Yes, sir.

"THE COURT: The Court will accept your plea of guilty in Cause Number 287822. Does the prosecutor have a recommendation? MR. PEPKA: Yes, Your Honor. The State would recommend a sentence of ten years in the Missouri Department of Corrections. THE COURT: Does defense counsel wish to say anything before sentence is imposed? MR. KIMBRELL: No, Your Honor. THE COURT: Does the prosecutor wish to make any statement? MR. PEPKA: No, Your Honor. THE COURT: Mr.

Doepke, do you know any legal reason why I should not now pronounce sentence upon you? MR. DOEPKE: No, sir.

"THE COURT: Then it is the judgment of this Court that you be sentenced to the department of Criminal Corrections for a period of ten years. * * *

"MR. KIMBRELL: Your Honor, at this time the defendant requests the Court to place him on probation to the federal authorities on the condition that he receive a sentence from the federal authorities on a charge now pending in the United States District Court.

"THE COURT: I didn't realize what you were getting at; perhaps we'd better do it at the end. I think it would be clearer. MR. KIMBRELL: All right, Your Honor."

The reference to probation came by way of request from Mr. Kimbrell: " * * * the defendant requests that in Cause Number 287822 and the other causes to which defendant has entered a plea of guilty to run concurrently with that charge, the Court to place the defendant on probation to federal authorities for prosecution on a charge now pending in the United States District Court on the condition that he receive a sentence on that charge."

This request was recognized in the manner previously recited, to which the court added: "If the federal authorities sentence you to ten years or more—whatever the charge is—then Missouri will have no further claim on you, for time that is. Do you understand? MR. DOEPKE: Yes, sir. THE COURT: All right; that will be the order of the Court."

Robert Eugene Doepke acknowledged the entry of guilty pleas on March 8, 1968. "Mr. Crandall (public defender) told me that I could plead guilty and receive a ten year sentence and be paroled or put on probation to federal charges that were pending * * *. And that through the federal court I could enter another plea and be sent to the narcotics hospital." He was

a narcotics addict, desirous of treatment in a federal institution, and this gave rise to the discussion and arrangement prior to pleading guilty. Upon being sentenced in the state court, he was taken to the federal marshal's office "And finally, * * * I was taken before Judge Reagan; and the United States Attorney for that Court requested that the charges against me be withdrawn. * * * I tried to ask the Judge not to withdraw those charges; to let me enter a plea of guilty. * * * He said it was too late * * *. He would not permit me to enter a plea of guilty. * * * I was brought from the Federal Marshall's office to the St. Louis County Jail * * * until I was taken to the Department of Corrections in Jefferson City." In deciding to plead guilty, he relied on the representations and arrangements discussed with his attorney. "When I entered these pleas of guilty, before I did, I had a five minute discussion with Mr. Kimbrell * * * and I asked my attorney, that if I did not receive the sentence from the federal court as was intended at that time, that if I was brought back here and my probation was violated, and would the Judge * * * allow me to withdraw my plea of guilty.

"Mr. Kimbrell told me * * * yes, I could withdraw my plea of guilty and that I would be brought back before this Court before any action was taken, and before I would be sent to the penitentiary. I did not plead guilty with the intention of having to serve this ten year sentence. I pled guilty with the intention of receiving a probation from this court to the federal court in St. Louis, Missouri; and that from the federal court, whatever sentence I would receive, I would also receive through that sentence care for narcotics addiction. Now that was the understanding that I had with my attorney before I walked in this courtroom. I don't believe my attorney told me—that is Mr. Kimbrell—before I entered the please, I don't believe he told me that I had to receive the full ten year sentence from the federal court."

William Crandall, a public defender, also counselled with defendant. Defendant talked with him about "Receiving narcotic treatment through the Court. Mr. Crandall told me that he didn't believe, or was not aware that this Court could send me to a narcotics hospital * * *. So he suggested that I enter a plea of guilty to the charges pending here * * * and be put on probation to the federal charges * * *. And that the federal court would allow me to be sent to a narcotics hospital for treatment. * * * I was under the impression if I pleaded guilty I would be sent to a narcotics hospital and that would be the end of it." There was no mention of ten years "Up until the point where Judge Lasky made the stipulation on the end of the sentence with the probation. He stated that I must receive a ten year sentence from the federal court or my probation, I believe he said, would be violated and I would return to the county and be sent to the Missouri Department of Corrections. * * * And I attempted at that point to bring it up to my attorney, and my attorney said, 'Leave it ride; don't worry about it.' Everything was fixed in the city."

Alan Kimbrell, one of defendant's attorneys from the public defender's office, "discussed with Mr. Doepke the previous conversations he had had with Mr. Crandall concerning arrangements which were to be made with the United States Attorney, with regard to a charge down there. I told him that it was my understanding that the United States Attorney had a charge which he had not previously decided whether to file or not to file. That after discussion with Mr. Crandall he had told Mr. Crandall that he would file this charge. * * *

"I personally confirmed these arrangements with the United State's Attorney. * * * And I informed Mr. Doepke that I had confirmed that this is what would be done by the United States Attorney's Office. * * * It was at least prior to

any matters in court on March 8th. * * * I advised Mr. Doepke that it was my impression that if in fact such charges were filed * * * by the United States Attorney's Office * * * that it was my belief that the Judge would be willing to place him on probation to the federal government for disposition of those charges. * * *

"I further discussed with him the indication that if he did not agree to do this, that if the pleas were withdrawn, either on his own volition or not, if the Court allowed him to withdraw these pleas, that the State would then force the cases to trial and that thereafter they would request and recommend consecutive sentences in the event he were found guilty on any of the charges."

The state called Judge Crandall for his recollection of his representation of defendant prior to February, 1968. "He indicated that he preferred to do his time in the federal penitentiary. He had an addiction problem which he had gotten in the penitentiary * * * when he did time before. * * * Bob indicated that he was an addict; he had become an addict in the penitentiary and that if he went back to the penitentiary he would continue to be an addict. He thought that he could receive better treatment for his condition in the penitentiary."

It appeared to Judge Crandall that one of defendant's reasons for pleading guilty in the state court was the prediction he would receive confinement in a federal penitentiary on a federal charge. Judge Crandall told defendant he "would try to get him into the federal penitentiary, and in my opinion I thought I could accomplish it." With respect to Judge Crandall's view of defendant's understanding of his guilty pleas, "there was no doubt about him serving time. He was going to do ten years; that's right. What he hoped to accomplish, and what I attempted to accomplish, that he would do his time in the federal penitentiary. I told him I would attempt to

do that. * * * THE COURT: Did you have any discussion with him as to what would happen if the Federal Judge decided he would serve those sentences concurrently rather than consecutively? JUDGE RANDALL: I don't recall. If there was a discussion, I honestly don't recall it now."

On March 5, 1970, the court overruled defendant's motions, without findings of facts and conclusions of law; and on July 9, 1970, pursuant to defendant's timely motion for findings of fact and conclusions of law, the court found:

"* * * that the defendant knew well what he was doing at the time and was not mistaken as to any fact of the sentencing; * * *. The defendant himself asked to be placed on probation to federal authorities, with the proviso that he receive a sentence from the federal authorities. If he did not receive a sentence from the federal authorities, he would not be placed on probation, or if on probation, this probation would be automatically revoked. The sentencing by federal authorities was a condition precedent to being placed on probation. No probation hearing was necessary to decide whether the defendant's probation should be revoked. The condition precedent, the defendant being sentenced by federal authorities, never materialized and hence the defendant was returned to the Missouri Correctional Institution at Jefferson City to serve out his ten year sentence. * * * that the defendant was not confused or mistaken as to what his sentence would be. * * * It is clear that Mr. Deopke knew he would have to serve ten years in the federal prison system or if the federal authorities did not incarcerate him, he would serve ten years in Missouri's Correctional System. * * * that the court record shows that Mr. Doepke was sentenced to ten years for burglary and ten years for stealing. The ten years on the stealing is excessive and appears to be a clerical error. The court finds that the extra five years on the stealing is surplusage."

Appellant contends the court erred in overruling his motion to withdraw his pleas of guilty because they were induced by promises made to him pursuant to agreement between counsel, court, and federal authorities, which rendered them involuntary; and that they were accepted by the court without prior determination that they were made voluntarily.

Criminal Rule 25.04, supra, provides that the court shall not accept a plea of guilty "without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant * * * pleads equivocally, * * * the court shall enter a plea of not guilty"; and Criminal Rule 27.25, V.A.M.R., provides that "to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

The record of the plea proceedings shows that the only inquiry with respect to defendant's understanding of the nature of the charges and the consequences of pleading guilty to them went to his understanding of his right to jury trial. There was no discussion of range of punishment; there was no inquiry with respect to whether defendant actually committed the offenses charged; there was no inquiry with respect to the presence or absence of coercion, threats, promises, agreements, or other inducements which may have borne on the decision to plead guilty, all of which indicates a failure to determine defendant's understanding of his pleas in compliance with Rule 25.04. See State v. Blaylock, supra, and compare the thorough inquiry in State v. Harris, supra, 382 S.W.2d l. c. 644–645.

The record, set out in some detail because it demonstrates the point, shows also that defendant's guilty pleas were equivocal and conditioned upon his obtaining a sen-

tence to a federal correctional institution, hopefully looking toward treatment for drug addiction.

Appellant's position is not that he was misled into pleading guilty, but that this record shows that he did so under the "impression" or misapprehension that the only "time" he would serve, as opposed to sentences he might receive, would be in a federal institution.

There can be no doubt on this record that counsel attempted arrangements to accomplish that purpose; that defendant relied on their opinion that they would be successful; and that the court recognized the existence of such arrangements when it attempted to condition execution of its sentences on failure of such arrangements, in its remand of defendant to federal authorities for purposes of those arrangements, and its finding to that effect.

In such cases, "It is immaterial whether the misleading was intentionally or unintentionally done. The material inquiry is: Was the defendant misled, or under a misapprehension, at the time he entered his plea of guilty?" State v. Dale, 282 Mo. 663, 222 S.W. 763, 764.

The record in this case demonstrates that more took place than simple "plea bargaining," and it answers the appropriate inquiry in appellant's favor. Accordingly, in order to correct manifest injustice, he should be permitted to withdraw his guilty pleas and to plead anew. See State v. Blaylock, supra; State v. Williams, Mo., 361 S.W.2d 772; State v. Smith, Mo., 421 S.W.2d 501; State v. Edmondson, Mo., 438 S.W.2d 237; State v. Rose, Mo., 440 S.W.2d 441; State v. Arnold, Mo., 419 S.W.2d 59; State v. Roach, Mo., 447 S.W.2d 553.

With the case in this posture, it is not necessary to discuss the irregularities in the burglary and stealing sentences. Attention to the provisions of Section 560.110,

V.A.M.S., can be accorded in the event of conviction on such charges.

Judgment reversed and cause remanded.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER, P. J., BARDGETT, J., and SEMPLE, Special J., concur.

HOLMAN, J., not sitting.