**Fred DELANY, Movant-Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. 56500.**

Supreme Court of Missouri,
Division No. 2.

Dec. 13, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 10, 1972.

P. Terence Crebs, St. Louis, for movant-appellant.

John C. Danforth, Atty. Gen., Thomas H. Stahl, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

In April 1965, Fred Delany and his brother, Robert Delany, were separately indicted for the murder of Peron Glass. On December 29, 1965, they separately entered pleas of guilty to murder in the second degree. Robert was sentenced to 20 years' imprisonment and is presently serving

that sentence. Fred was sentenced to 25 years' imprisonment but on January 28, 1966, was placed on probation for five years. Subsequently his probation was revoked and five years after the entry of his plea of guilty, in March 1970, Fred, proceeding under Rules 27.25 and 27.26, V.A. M.R. filed a motion to withdraw his plea of guilty and to vacate the original judgment and sentence. After a hearing, the motion was denied and Fred has appealed.

■ While his motion and appeal are primarily concerned with the claims of ineffective counsel and involuntary plea of guilty his counsel has made a subsidiary point that in this 27.25–27.26 proceeding the court erred in finding that the original "sentence and judgment below was in accord with and appropriate with the facts of the case." The basis of this point is that in accepting the plea of guilty the court made the inquiry, "What did this man do?" The prosecutor replied, "One of the gentlemen, Robert Delany, actually pulled the trigger, and the other man, Fred Delany, handed him the gun from which the trigger was pulled. Both of them are charged with Murder Second." The appellant points to this statement and now argues that he could not have been found guilty on this statement—that the prosecutor's statement "does not support the crime charged." In this connection he argues "(t)he fact that appellant may or may not have handed his brother a gun from which a shot was fired which killed a person is in no way sufficient to support a Second Degree Murder conviction." Quite aside from the problem of whether Fred's guilt or innocence, he does not even now contend that he was not guilty and he does not challenge the revocation of his probation, was an issue in this proceeding or is an open question on this appeal, the prosecutor's statement was not the only matter before the court. In no uncertain terms the information charged that on May 1, 1965, Fred Delany "feloniously, wilfully, premeditatedly, on purpose and of his malice aforethought did make an assault upon one

Peron Glass with a loaded shot gun and then and there, feloniously, wilfully, premeditatedly, on purpose and of his malice aforethought did discharge said shot gun at and upon the body of the said Peron Glass thereby feloniously inflicting a mortal wound upon the said Peron Glass from which said mortal wound Peron Glass did die on May 1, 1965." To this indictment Fred Delany in the very proceeding now attacked entered a plea of guilty and if that plea is not invalid for some reason there is in addition to the prosecutor's statement his most solemn admission of guilt and certainly all the elements of murder in the second degree even though Fred's part in the murder was that of handing the lethal weapon to his brother. State v. Darling, 216 Mo. 450, 115 S.W. 1002; State v. Paxton, Mo., 453 S.W.2d 923.

■ The appellant's three points as to effective counsel and knowing, voluntary plea of guilty are interrelated. In part his counsel's argument here is a bit technical and factually relies solely on his client's testimony that he did not understand the charge or the proceedings and did not voluntarily enter a plea of guilty and that he did not have effective assistance of counsel. These in brief were the facts as the court did and could find them: From the testimony of Mr. John D. Chancellor, using a file of the Public Defender's office, the court could find that on October 4, 1965, he talked to Fred, then age 23 years, concerning this particular charge of murder in the second degree. He said, "First, let me say this, *he was a client as far as the Public Defender's Office was concerned* or else we wouldn't have a file on him; not only a file, but a number of entries here that are not my entries, but entries from time to time and dated entries and previously referred to. So, as far as the Public Defender's Office was concerned at that time, at least up to the 29th day of December, 1965, *he was a client of the Public Defender.*" Mr. Noskay who was then the Public Defender said that on Sep-

tember 27 (1965) he talked to Fred and on that date Fred did not have an attorney "but thought he was going to get one." Noskay, however, attended his arraignment on September 2, 1965 at which a plea of not guilty was entered and Mr. Chancellor was assigned to the case. In any event, in the Public Defender's file was a memorandum reciting that on December 29, 1965, "Paul Dobberstein enters his appearance" as counsel for Fred.

And these are the circumstances as to Mr. Dobberstein and the appellant, Fred Delany, and the unusual factual circumstance of the appeal: On May 10, 1965, Robert Delany, or someone on his behalf, employed the well-known law office of Mr. Morris A. Shenker to represent him and Mr. Paul Dobberstein was assigned to and handled his case. The long and short of that representation was that it was determined that Robert was to enter a plea of guilty on December 29, 1965. In the course of representing Robert Mr. Dobberstein, of course, familiarized himself with the facts of the charge and while he could not recall the date he did talk to Fred. However, he did nothing by way of representing Fred until December 29, 1965, when he entered his appearance in Fred's case as his attorney. He said that after disposing of Robert's case "I spoke to Robert and to Fred, and I agreed to enter my appearance for Fred *for the purpose of trying to work something out on his case.*" (Emphasis supplied throughout.) In the course of his discussion with Fred "the possibility" of his going home on that day on his own recognizance was mentioned, 'it was kind of a—*I would say a package deal, all worked out at the same time.*" And so Mr. Dobberstein negotiated with or talked to Mr. Fredericks, the assistant prosecutor, and reported to Fred and Robert. He said that he informed Fred that he would ask the court for his release on his own recognizance *"pending the presentence investigation."* And as to Fred's response he said, "Well, he indicated that this would be agreeable with him, that he would like the idea of being released on his recognizance bond pending a presentence investigation." And while Fred now says that he talked to Mr. Dobberstein "about three minutes" he says: "He told me my brother wanted him to represent me," and "He told me I could get probation. * * * He told me I was going home. * * * *All I was thinking about was going home,* he told me I was going home that morning." And while he now says that he did not understand the consequences of a plea of guilty after answering "Yes, sir" to the court's inquiry "You understand the consequence of this plea?" he now says "I don't know (my understanding), *I thought I was going on probation, and I said yes.*" Even now he concedes that the court informed him of the possible penalties and of his right to a jury but he says "I was thinking about going home" and, finally, he said, "I went home." The result of Mr. Dobberstein's representation of both Fred and Robert and the consequence of their pleas of guilty was that Robert's previous sentence of 25 years' imprisonment was reduced to 20 years and Fred was sentenced to 25 years' imprisonment and almost immediately placed on probation for five years.

It is in these circumstances that present counsel argues that there is no evidence "that appellant ever had employed counsel," that appellant was not "ably and properly represented" or that he was either advised or understood the charge and the consequences of entering a plea of guilty. While the circumstances of Mr. Dobberstein's representation of Fred may be a bit unusual, it must be plain that Fred was in no way misled by either Mr. Dobberstein, the court or state's counsel as in State v. Edmondson, Mo., 438 S.W.2d 237. The fact of brief consultation with counsel is not determinative, as this case illustrates, of the effectiveness of counsel or the involuntariness of a plea of guilty. The sum and substance of the representation by counsel, the plea of guilty and even the essence of the cause is that the appellant Fred Delany received exactly what he thought he would receive upon an unequiv-

ocal (State v. Blaylock, Mo., 394 S.W.2d 364) plea of guilty, probation for five years, "I thought I was going on probation," and if there were any agreements, the state, state's counsel, Mr. Dobberstein, and everyone connected with the cause have scrupulously kept their bargains and only the appellant after five years and the revocation of probation would rue his once thoughtful course and the opportunity to escape imprisonment for murder. Turley v. State, Mo., 439 S.W.2d 521; State v. Turley, 443 F.2d 1313 (1971); North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. The trial court's findings and denial of relief are indeed supported and, as indicated, the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.