**Leonard Lee CREGO, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 54450.**

Supreme Court of Missouri,
Division No. 2.

Dec. 8, 1969.

———◆———

Arkley W. Frieze, Carthage, for movant-appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

On May 7, 1962, Leonard Lee Crego entered a plea of guilty to a charge of armed robbery and was sentenced to twenty-five years' imprisonment. Upon the robbery charge he was represented by Mr. Roy Coyne to whom he claims to have paid a fee of $1500.00. In this 27.26 proceeding, perhaps more accurately a 27.25 proceeding to withdraw a plea of guilty, instituted six years later, September 3, 1968, the court took "judicial knowledge of the fact that Roy Coyne practiced law in this County for approximately 50 years, served several terms at different times as Prosecuting Attorney, was widely known as a criminal lawyer who was a hard fighter for his client and an able lawyer." Upon the hearing of his 27.26 proceeding he was represented, by court appointment, by the equally

well-known and respected Senator Frieze. Senator Frieze did not propare his 27.26 motion, however. That was a pro se motion and while the appellant employed the form supplied in the rule he did not carefully comply with its plain direction but has included a long list of miscellaneous citations to federal cases and irrelevant statements with respect to constitutional rights. Dates here are important, as stated, the plea of guilty was entered on May 7, 1962, before Honorable Ray Watson, the motion to vacate was filed on August 28, 1969, and was heard on November 26, 1968, by Judge Watson who made his findings of fact and denied the motion on December 12, 1968.

As stated, on August 28, 1968 (the transcript in obvious error says "1969") Crego filed his pro se motion to vacate and material here he made and swore to these allegations that his plea of guilty was involuntary and violative of due process for the following reasons:

"1. That the movant's plea of guilty was made as a result of a *'PROMISE'* from the prosecutor. (Emphasis by appellant.)

2. That the prosecutor promised the movant if he would make a statement, and enter a plea of guilty, he (the prosecutor) would drop charges on Lettie B. Thorp (a friend of the movant's) and that the movant would receive a 10-year sentence in exchange for his plea of guilty.

3. That the prosecutor misled the movant and induced him to plead guilty by said *'PROMISE.'* "

The only mention of his own attorney, Mr. Coyne, throughout the proceeding was in answer to question 15 and its six subdivisions and question 16; that from preliminary, arraignment, plea of guilty, sentencing and throughout "all the proceedings" he was represented by Mr. Coyne. It was developed on his direct examination that he did not learn until after the filing of this motion on September 3, 1968, and

just before the hearing of the motion, and through Senator Frieze that Mr. Coyne was dead.

"Q. (Senator Frieze) Have you recently learned by a letter from me that Mr. Coyne had died?

A. Yes, sir."

And upon the trial of this proceeding, instead of testifying as he solemnly affirmed in his motion that the prosecuting attorney, Mr. Tatum, misled him he testified that trial date was set for May 7, 1962, and he intended to stand trial but on that date "Mr. Coyne came around and informed me that he had just got through talking to the Prosecuting Attorney, Mr. Tatum, and Mr. Tatum had told him that—of course, I was told this through Mr. Coyne—that if I wanted to change my plea from not guilty to guilty, that he would recommend a sentence of ten years and that the girl that was involved at this time on some hacksaw blades, (slipped to Crego in the courtroom) the charges would be dropped on her also. So I asked Mr. Coyne if he was sure of this, and he said, 'Yes,' and of course, we came in here and changed our plea from not guilty to guilty." And so the appellant said, "relying upon the conversation you had with your attorney, you did come into this court room and change your plea from a plea of not guilty that had been previously entered by you either in person or by your attorney to a plea of guilty, is that correct? A. That is true." He said, "The only reason I changed my plea from not guilty to guilty was the fact that through Mr. Coyne, I understood that I would receive a sentence of ten years or that that was what would be recommended by the Prosecuting Attorney." And, as to the prosecuting attorney, Mr. Tatum, and contrary to the allegations of his motion:

"Q. Mr. Crego, did you at any time from the time you were arrested up until and after the time of your sentence to the twenty-five years in the penitentiary on May 7th, 1962, have any conversation at all with Stewart Tatum who was the

## 552

Prosecuting Attorney of Jasper County? You don't claim that you had the conversation yourself with him, do you?

A. No, sir, I didn't.

Q. But you do say that you did rely upon the representations and statements made to you by your attorney, is that correct, sir?

A. That is true."

Since as stated there was no allegation in the appellant's carefully prepared motion with respect to misrepresentations by his own hired lawyer or any claim of incompetent counsel his first step here is to invoke Civil Rule 55.54, V.A.M.R.: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." It is not necessary to determine the propriety of this procedure, it is assumed that the basis of his claim of relief is the misrepresentation of his lawyer, Mr. Coyne. In this connection Mr. Tatum testified in this proceeding that on May 7, 1962, he was ready for trial, had subpoenaed his witnesses and the only promise he ever made to Mr. Coyne was "none other than this case would be prosecuted to the fullest extent of the law." Categorically he denied telling Mr. Coyne that he would recommend ten years for Crego or that he would drop the charges as to Lettie B. Thorp. On the contrary he said Mrs. Thorp was prosecuted and convicted.

Also relevant on this particular issue the transcript of the entry of the plea of guilty and the proceedings in connection with it were offered in evidence in this proceeding and Mr. Tatum in response to the court's inquiry made a detailed statement as to the facts of the principal charge and briefly these were that Crego and another had "more or less cased the store out there" and on December 30, 1961, saw Mr. Wilson, the manager of the Safeway Store, leave with a paper sack which they assumed contained the day's receipts and so they follow-ed Mr. Wilson to his home in Joplin, 902 Jackson Street. One of the robbers went to the back door of the Wilson home and the other to the front door and "they crashed into the home"—one of them wearing a disguise and the other a sack over his head and at gunpoint forced Mr. and Mrs. Wilson and "their young daughters" to sit on the floor and after being convinced that the paper sack did not contain the day's receipts "at pistol point" they took the whole family to the store "held the wife and children captive" and forced Mr. Wilson to open the store safe and took in excess of $2000.00. With two automobiles they took the Wilsons "to a location near Joplin in the boondocks." Crego and his accomplice fled in Crego's white Corvette and eventually was extradited from California. After reciting these and other facts to the court, and in the presence of Mr. Coyne and his client, Mr. Tatum recommended a sentence of "not less than fifty years." Judge Watson said, "Well, of course the Court doesn't have to follow recommendations" and imposed a sentence of twenty-five years. On this hearing appellant remembered Mr. Tatum's statement and recommendation but said nothing to his lawyer, he said, "I nudged my lawyer and he said, 'Don't worry about it. I'll take care of it.' And that was all that was said."

In its findings of fact in this proceeding the court pointed to appellant's original self-prepared motion and made this finding: "By reason of the allegations in the Motion and the testimony of Movant there is a credibility gap and the Court finds that Movant has not sustained the burden of proof; that the prosecutor made no promise of ten years to the Movant or to Mr. Coyne, his attorney, and the fact that Movant has made no complaint for over six years and then only after the death of Mr. Coyne, his employed attorney, the court is quite doubtful of the veracity of Movant in making the statement that Mr. Coyne told him he would receive a sentence of ten years." And therefore, of course,

the court denied appellant's claim for relief. It is not necessary to reiterate and demonstrate, upon this record the court's findings are supported and, needless to say, are not clearly erroneous and it necessarily follows that appellant is entitled to no relief under any possible theory. Walster v. State, Mo., 438 S.W.2d 1; State v. Rose, Mo., 440 S.W.2d 441; State v. Hamel, Mo., 420 S.W.2d 264; Crosswhite v. State, Mo., 426 S.W.2d 67; Drew v. State, Mo., 436 S.W.2d 727.

■ This supported finding may be sufficient inferentially if not directly to dispose of the appellant's additional claim that the court failed to comply with the standards of Criminal Rule 25.04, V.A.M.R., in accepting the plea of guilty "without first determining that the plea is made voluntarily with understanding of the nature of the charge." The plea of guilty was entered on May 7, 1962, this proceeding was instituted on September 3, 1968, and Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, are applicable only to "those defendants whose guilty pleas were accepted after April 2, 1969." Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16. The case is certainly not comparable to State v. Smith, Mo., 421 S.W.2d 501, in which there was an equivocal finding by the court, or to the circumstances of State v. Blaylock, Mo., 394 S.W.2d 364. It will be advisable hereafter for all courts in accepting pleas of guilty to consider the Boykin and McCarthy cases and act accordingly. Here the appellant's basic complaint is not that he did not understand the nature of the charge or that he did not intelligently and knowingly plead, he knew the minimum punishment for armed robbery but not the maximum, he claims that he was to receive ten years' punishment rather than twenty-five which was well within the statutory limits of not less than five years or life imprisonment or even death. RSMo 1959, § 560.135, V.A.M.S. And finally, the court's finding and the record in this case, particularly the court's disbelief of plaintiff's testimony, is supported and appellant is entitled to no relief under Criminal Rule 25.04. Mooney v. State, Mo., 433 S.W.2d 542.

Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.