**Herman Joseph FLOOD, Jr., Movant-Appellant,**

**v.**

**STATE of Missouri, Respondent.**

No. 56269.

Supreme Court of Missouri,
Division No. 2.

Jan. 10, 1972.

Motion for Rehearing or to Transfer to Court
En Banc Denied Feb. 22, 1972.

sentences of imprisonment for life imposed in 1958 upon pleas of guilty in two cases of murder, first degree, and to permit the withdrawal of the pleas of guilty. Rules 27.26 and 27.25.[1]

On February 17, 1958, following a preliminary examination at which he was represented by counsel, Herman Joseph Flood, Jr., (hereinafter movant or Flood) was charged in separate informations with the murders of Victor Spinetto and Virgil Usrey on December 15, 1957, in Greene county. On February 18, 1958, George J. Donegan and Sam M. Wear, attorneys of Springfield, were appointed by the circuit court to represent Flood. On April 11, 1958, Flood appeared with his attorneys before the Honorable Warren L. White, Circuit Judge, entered a plea of guilty to each charge, and, as indicated, was sentenced in each case to imprisonment for life. His motion to set aside the two judgments and permit him to withdraw the pleas of guilty was filed August 8, 1970.

The grounds alleged in his motion are, in substance: (1) that the trial judge failed to comply with the provisions of Rule 25.04 before accepting his pleas of guilty; and, (2) that his pleas were not voluntarily and intelligently entered because he did not know and understand that amendments to the federal constitution guaranteed him (a) a privilege against compulsory self-incrimination; (b) a right to a trial by jury; and (c) a right to confront the witnesses against him.

Kenneth H. Reid, Springfield, for movant-appellant.

John C. Danforth, Atty. Gen., Thomas H. Stahl, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

HENLEY, Judge.

This is an appeal from a judgment overruling a motion to vacate and set aside two

The only records found of the proceedings had the day Flood entered the pleas of guilty are the clerk's docket sheet, the judge's docket sheet and the judgment in each case. These records show nothing more than (1) the appearances of the parties with counsel; (2) the pleas of guilty, (3) the findings of guilty, (4) allocution, and (5) the sentences. There is no record of what was said during these proceedings by either the trial judge, the pros-

1. All references to rules are to Rules of the Supreme Court of Missouri and V.A. M.R.; references to sections of statutes are to RSMo 1969 and V.A.M.S.

ecuting attorney, Flood or his counsel. Two of those present and directly participating in those proceedings are now dead: Judge White and Sam Wear. Three are living: Flood and one of his attorneys, George Donegan; and Lyndon Sturgis, prosecuting attorney at the time.

B. D. Miller, official court reporter for Judge White for 36 years and on the day of Flood's pleas, now retired, testified that he has no recollection of being in the courtroom at the time Flood appeared to plead, that he is "pretty sure" he was not; that Judge White's practice or policy with reference to whether the court reporter was required to take notes of guilty plea proceedings was that if the defendant was not represented by counsel the reporter was required to and did take notes and keep a record, but that the reporter was not required to take notes and keep a record when the defendant was represented by counsel; that he has his shorthand notes of court proceedings for the month of April, 1958, and has searched but could not find notes of the proceedings in these two murder cases. He further testified that it was Judge White's practice in guilty plea cases to explain to a defendant his constitutional rights whether or not he was represented by counsel.

Movant, age 33 at the time of the hearing on his motion, testified on direct examination that he completed the tenth grade of high school; that it was and is his intention to abandon his claim that he did not have effective assistance of counsel at his arraignment, plea and sentencing as alleged in his original motion and that it is his intention to rely only on the grounds alleged in his amended motion; that Judge White did not ask him anything other than what his plea was; that Judge White did not explain to him or discuss with him the nature of the charges pending against him, his privilege against self-incrimination, the consequences of a plea of guilty, the extent of the punishment that could be imposed, his right to a trial by jury, or the right to confront and cross-examine the witnesses against him; nor did the judge ask him whether he knew or understood these matters, or whether he had conferred with his attorneys, or whether he had been coerced or forced to plead guilty. He testified on cross-examination that he has abandoned and is not asking for relief on the ground (alleged in his pro se motion but not alleged in his amended motion on which the matter went to trial) that his statement or confession given to the sheriff and other officers while in custody before his preliminary hearing was obtained by physical abuse and therefore, involuntary, or that the threat of its use at a trial coerced his pleas of guilty; that George Donegan was retained to represent him at the preliminary hearing and did so; that he talked with his attorney before the preliminary hearing; that he understood at the preliminary that he was charged with first degree murder in two cases for the killing of Victor Spinetto and Virgil Usrey; that Sheriff Hendrix, Chief Robards and the prosecuting attorney had told him, and he understood, that he could be sentenced to death for these murders. He further testified on cross-examination that he and his attorneys discussed the cases on several occasions before he appeared in court to plead guilty; that he supposes they went over the whole case with him; that he and his attorneys concluded that it would be best for him if he would enter a plea of guilty to both charges and that he " * * * figured that was the best way to avoid the death penalty"; that he understood that he was charged with felony-murder, killing these two men while robbing one of them; that he remembers that he entered a plea of guilty "in his own voice" and remembers that the judge did not ask him whether he had been coerced, but that he does not remember whether or not his attorneys advised or discussed with him his constitutional privilege against compulsory self-incrimination, his right to a trial by jury, or his right to confront the witnesses against him, or any other constitutional rights; nor does he remember whether he knew or understood these or other rights at that time.

Sam Robards, chief of police of Springfield, testified that he assisted in the investigation of the murders of Spinetto and Usrey; that he was present when Flood gave a statement in which he described the circumstances of this event and how he had killed these men; that Sheriff Hendrix and the prosecuting attorney, Lyndon Sturgis, were also present; that Sheriff Hendrix informed Flood that he was charged with these two murders and that if guilty he could be sentenced to death; that Flood was not forced or abused or threatened with force or abuse, nor was he promised anything by anyone to persuade him to make a statement.

Lyndon Sturgis, prosecuting attorney of Greene county in 1958, testified that he was present when Flood pleaded guilty to these charges; that he cannot now recall the exact words of what was said by anyone at that time, but that he is sure that Judge White explained to Flood the charges against him; that at Judge White's request he related to the judge the facts pertaining to the two killings and that both Mr. Wear and Mr. Donegan made statements on behalf of Flood; that in 1958 the practice of the court was that any shorthand record of guilty proceedings need not be transcribed.

George J. Donegan testified that he represented Flood at his preliminary examination in magistrate court and, after an information had been filed in circuit court, he and Sam Wear were appointed to represent Flood in circuit court; that he discussed the case with Flood several times before the preliminary; that after the preliminary he and Mr. Wear discussed the case and advised with Flood on several occasions; that they had a copy of Flood's seventy-odd page confession made to Sheriff Hendrix and others and a copy of the transcript of the preliminary hearing and discussed these with Flood in detail; that by their investigations and discussions with Flood and people who had known him most of his life they reached the conclusion that he had no defense; that they explained to him and he understood the nature of the

charges and what the state would have to prove to convict him; that they told him that if convicted his punishment would be not less than life imprisonment and that it could be the death penalty, but that their opinion was that it would not be more than life imprisonment; that they advised him and he understood (1) that he could plead guilty or not guilty and that if he pleaded not guilty the trial would be before a jury, that they would represent him at that trial, and that he could but that he would not be required to testify; (2) that he had the right to a trial by jury; (3) that he had the right to confront in court any witnesses against him and the right to cross-examine those witnesses; (4) that if he pleaded guilty this would be a conclusive admission that he did kill these two men from which the court could and would find him guilty and the judge would fix the punishment, but that if he pleaded not guilty the jury would determine whether or not he was guilty and, if it found him guilty, the jury would fix the punishment. He further testified that Flood's decision to plead guilty was his own. He further testified that he is unable now to remember exactly what was said by anyone on the occasion of the appearance in court of Flood, himself and Mr. Wear for the purpose of pleading in the two cases, but he does recall that Judge White read the information aloud, that pleas of guilty were entered, that the prosecuting attorney made a brief and accurate statement of the facts, that he made a brief statement pleading for mercy for Flood. He further testified that Mr. Wear made a rather lengthy statement in which he related to the judge in detail what investigation of the case had been made by the court appointed attorneys, what discussions they had had with Flood, and what information and advice they had given and what explanations they had made to him relative to his rights under the law.

The first point relied on by movant is that the court erred in overruling his motion to vacate the judgments and permit him to withdraw his pleas of guilty, because Judge White failed to comply with that provision of Rule 25.04 which requires that the court

not accept a guilty plea " \* \* \* without first determining that the plea is made voluntarily with understanding of the nature of the charge." Movant asserts that the judge failed to comply with the rule in that he (1) did not question Flood personally to ascertain whether the pleas were made voluntarily with understanding of the nature of the charges and the consequences of the pleas, (2) did not advise him of his rights, and (3) did not determine that the pleas were voluntarily and understandingly made. He contends and argues that the rule is mandatory that the trial judge so question and advise a defendant before accepting his plea of guilty and that for failure to comply with these requirements the judgment must automatically be set aside and the defendant granted leave to plead anew. In support of his position he cites State v. Reese, Mo., 457 S.W.2d 713; State v. Williams, Mo., 361 S.W.2d 772; State v. Smith, Mo., 421 S.W.2d 501; and State v. Blaylock, Mo., 394 S.W.2d 364.[2]

Unlike Federal Rule 11[3] (as amended effective July 1, 1966) our Rule 25.04 does not specifically require that before accepting a plea of guilty the court shall first address the defendant personally or that the court determine that the defendant understands the consequences of the plea; nor does it specifically require that the trial judge be " \* \* \* satisfied that there is a factual basis for the plea." However, in State v. Reese, supra, 457 S.W.2d at 719, and State v. Blaylock, supra, 394 S.W.2d at 367, both post-conviction cases, and in State v. Williams, supra, 361 S.W.2d at 773–774, and State v. Smith, supra, 421 S. W.2d at 504, both appeals from judgments of conviction, we reversed and remanded because the trial judge had failed to make proper inquiry of the defendant before accepting his plea.

■ Movant urges this court to require strict compliance with Rule 25.04, the same strict compliance required by the United States Supreme Court of the federal trial courts with Federal Rule 11 in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418.[4] We decline to adopt such a per se rule in this case for two reasons. First, at the time of these pleas the rule specifically required only that the judge "determine" that the pleas were voluntarily and understandingly made; it did not in 1958, and it does not today, make the same strict requirements of the trial judge as did Federal Rule 11 of the federal trial judge when that rule was expanded by amendment in 1966 to require that the trial judge make explicit inquiry of a defendant. Further, it may not be said with certainty and authority that Judge White did not make the necessary determination. According to the testimony of attorney Donegan, Judge White had information through the statement of attorney Wear from which he could make the proper determination. We may not say today that the judge erred in 1958 by failing to comply with provisions not then in Rule 25.04.

■ Second, the basic question is whether or not Flood's pleas of guilty were in fact voluntarily made with understanding of the nature of the charge, State v. Mountjoy, Mo., 420 S.W.2d 316, 323–324[4–8]; not whether the trial judge followed some particular procedure before accepting the pleas. Furthermore, in determining in this collateral attack upon the judgments whether the pleas were so made, the trial court is not limited to a consideration of what was in fact said and done at the time the pleas were accepted. Nor is the court limited to the record made at the time. In making this determination the trial court may con-

2. See also: State v. Good, Mo., 403 S.W. 2d 594.

3. Federal Rules of Criminal Procedure, 18 U.S.C.A.

4. In *McCarthy* the court held that when a plea of guilty is accepted in violation

of Rule 11 the defendant must be afforded an opportunity to plead anew; that the plea should automatically be set aside when it appears that the court has failed to comply with the letter of the rule.

sider also the evidence produced at the hearing on the motion to vacate the judgments. State v. Mountjoy, supra; State v. Davis, Mo., 438 S.W.2d 232, 235[5–7].

■ To fail to permit the trial court to consider, in the post-conviction proceeding, evidence of the participants as to the circumstances under which the guilty pleas were entered, would be to fail to seek the facts and to ignore the truth. To require in this case that the trial court should have in 1958 followed specific procedures first suggested in more recent years would be not only to elevate form over substance and to ignore the mandate of Article V, § 5, Constitution of Missouri, that no rule of procedure may be effective before six months after its publication,[5] but, more important, it would result in a miscarriage of justice, because it clearly appears from the evidence that movant not only knew and understood all of his rights but that there was factual basis for his admission of guilt.

■ We note that the motion in this case was filed long after the death of the judge who accepted the pleas and more than 12 years after the sentences were imposed. A motion for leave to withdraw a plea of guilty after sentence should be filed within a reasonable length of time, taking into consideration the nature of the allegations of the motion. See: ABA Standards for Criminal Justice, Pleas of Guilty, § 2.1(a) (i), p. 55; 55 Columbia Law Review 366, 379–380. Whether a motion is timely is a question which must be determined on a case to case basis. We have the view that the grounds alleged in this motion were

known or should have been known to movant not less than a year before the motion was filed. However, since we do not decide the case on this question, we need not determine whether the motion was timely filed.

■ As to movant's second point, i. e., that he did not know and understand that he had federal constitutional rights which guaranteed that he could have a trial by jury, that he could confront the witnesses against him, and that he could not be compelled to testify against himself, there is clear and persuasive evidence that he knew and understood these rights and that he voluntarily and understandingly waived them when he appeared with counsel before Judge White and entered pleas of guilty.

■■ The trial court in this case found and concluded that the pleas of guilty were voluntarily and understandingly made, and we determine that these findings, conclusions and the judgment are not clearly erroneous. In these circumstances it is not necessary that we discuss or rule on the question raised by movant as to where the burden of proof lies. He urges the court to hold that Boykin v. Alabama, supra, operates retroactively and that we apply its teachings to this case. We held in Crego v. State, Mo., 447 S.W.2d 550, 553[2] (December, 1969) that *Boykin* would not be applied retroactively and adhered to that decision in State v. Grimm, Mo., 461 S.W.2d 746, 752[1] (January, 1971). We continue to adhere to that decision on this question and note that it is clearly in accord with that of at least half of the states.[6]

The judgment is affirmed.

5. It may be that in light of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (June, 1969), our Rule 25.04 should be amended, but, if so, the amendment would not apply to prior cases. It has become increasingly apparent that in accepting pleas of guilty the trial judge should have the court reporter take, transcribe and file as a part of the permanent record of the case all the proceedings had at the time the plea is entered.

6. Alabama: Hall v. State, 45 Ala.App. 252, 228 So.2d 863; Arizona: State v. Griswold, 105 Ariz. 1, 457 P.2d 331; California: In re Tahl, 1 Cal.3d 122, 460 P.2d 449; Colorado: Ward v. People, Colo., 472 P.2d 673; Connecticut: Consiglio v. Warden, Conn. State Prison, 160 Conn. 151, 276 A.2d 773; Florida: Odle v. State, Fla.App., 241 So.2d 184; Illinois: People v. Williams, 44 Ill.2d 334, 255 N.E.2d 385; Kentucky: Ford v. Commonwealth, Ky., 453 S.W.2d 551;

MORGAN, P. J., concurs in result.

DONNELLY, J., concurs in separate concurring opinion filed.

FINCH, Alternate Judge, concurs and concurs in separate concurring opinion of DONNELLY, J.

HENLEY, J., concurs in separate concurring opinion of DONNELLY, J.

DONNELLY, Judge (concurring).

I concur in the principal opinion but desire to direct attention to relatively recent expressions by the United States Court of Appeals for the Eighth Circuit on problems relating to guilty pleas.

Rule 11 of the Federal Rules of Criminal Procedure is quite similar to our Rule 25.04. Rule 11 reads as follows:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

Rule 32(d) of the Federal Rules of Criminal Procedure is quite similar to our Rule 27.25. Rule 32(d) reads as follows:

"(d) Withdrawal of Plea of Guilty. A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

In United States v. Cody, 8 Cir., 438 F.2d 287 (1971), the Court attached as an appendix to its opinion, with apparent approval, a recommended procedure for conducting a guilty plea proceeding. If adapted to Missouri, it *could* read substantially as follows: If defendant's plea is guilty:

[V.A.M.R. 25.04; Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).]

a. before accepting plea:

    (1) ascertain and make finding that defendant:

        (a) is acting voluntarily (if in doubt, consider whether the defendant should be given a mental examination, V.A. M.S. § 552.020);

Louisiana: Selph v. Veron, 254 La. 1095, 229 So.2d 111; Maine: Grass v. State, Me., 263 A.2d 63; Maryland: Silverberg v. Warden, Maryland Penitentiary, 7 Md.App. 657, 256 A.2d 821; Michigan: People v. Taylor, 23 Mich. App. 595, 179 N.W.2d 260; Nevada: Mathis v. Warden, Nevada State Penitentiary, 86 Nev. 439, 471 P.2d 233; New Mexico: State v. Guy, 81 N.M. 641, 471 P.2d 675; North Carolina: State v. Harris, 10 N.C.App. 553, 180 S.E.2d 29, 34; Oregon: Endsley v. Cupp, 1 Or.App. 169, 459 P.2d 448; Pennsylvania: Commonwealth v. Godfrey, 434 Pa. 532, 254 A.2d 923; Rhode Island:

Flint v. Sharkey, R.I., 268 A.2d 714; South Carolina: Davies v. State, 253 S.C. 501, 171 S.E.2d 720; South Dakota: Nachtigall v. Erickson, S.D., 178 N.W.2d 198; Virginia: Bridgers v. Commonwealth, 211 Va. 370, 177 S.E. 2d 526; Washington: Miller v. Rhay, 1 Wash.App. 1010, 466 P.2d 179; Wisconsin: Ernst v. State, 43 Wis.2d 661, 170 N.W.2d 713; and Wyoming: Teton v. State, Wyo., 482 P.2d 123, 127. See also: United States ex rel. Hughes v. Rundle, 419 F.2d 116 (3rd Circuit); Meller v. Missouri, 431 F.2d 120 (8th Circuit).

(b) fully understands his rights;

(c) fully understands the consequences of his plea;

(d) is in fact guilty;

(2) explain and ask defendant if he understands:

(a) that the court need not accept his plea unless satisfied of defendant's guilt and that defendant fully understands his rights;

(b) that if he pleads not guilty he would be entitled to a speedy and public trial by a judge or jury;

(c) that at such trial the State would have to confront him with the witnesses upon whose testimony it relied to obtain a conviction, and he would have the right to cross-examine these witnesses;

(d) that at such trial he would be presumed innocent until such time, if ever, as the State established his guilt by competent evidence to the satisfaction of the judge or jury beyond a reasonable doubt;

(e) that at such trial he would be entitled to compulsory process to call witnesses;

(f) the nature and essential elements of the charge to which he is pleading;

(g) the range of penalties to which he is subjecting himself by his plea including the maximum sentence;

(3) ask defendant:

(a) if any threats or promises have been made to induce him to plead guilty;

(b) if he believes there is any understanding or if any predictions have been made to him concerning the sentence he will receive;

(c) if he committed the offense;

(d) just what he did (obtain admission of necessary acts, knowledge, and intent);

(e) if he still wishes to plead guilty;

(f) any additional questions required by the circumstances.

(4) ask defense counsel if he knows any reason why defendant should not plead guilty;

b.  accept or reject plea;

c.  if plea is rejected, or if defendant refuses to plead, enter a plea of not guilty and set date for trial;

d.  if plea is accepted, enter an order finding that the plea is made voluntarily with understanding of the nature of the charge, and is therefore accepted.

On May 18, 1971, in State of Missouri v. Turley, 8 Cir., 443 F.2d 1313, at 1318, the Court expressed itself as follows:

"This Court has recently considered the duties of a Federal District Court Judge under Fed.R.Crim.P. Rule 11 when accepting a guilty plea.  See United States v. Rawlins, 440 F.2d 1043 (8th Cir. 1971); United States v. Woosley, 440 F.2d 1280 (8th Cir. 1971); United States v. Cody, 438 F.2d 287 (8th Cir. 1971).  Rule 11 is, of course, not applicable in state proceedings.  Nevertheless, once it has been established that a state court has, at the time of accepting a guilty plea, elicited sufficient information from the parties so that the propriety of accepting the plea is established in a manner analogous to the dictates of Rule 11, and an adequate record is made thereof, the occasion for setting aside a guilty plea should seldom arise. United States v. Rawlins, *supra*.  The ascertaining of such information and the recording thereof are not exercises in futility.  United States v. Woosley, *supra*.

"It is worthy of note here that a minority of the Justices of the Supreme Court have indicated that in that minority's estimation, the Supreme Court has in effect fastened

upon the states, as a matter of federal constitutional law, the requirements of Rule 11. Fed.R.Crim.P. See Mr. Justice Harlan, whom Mr. Justice Black joins, dissenting in Boykin v. Alabama, 395 U.S. 238, 245, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). It appears from the majority opinion in *Boykin* that an on the record examination conducted by the trial court accepting a guilty plea which includes, *inter alia*, an attempt by that Court to satisfy itself that the defendant understands the nature of the charges, his right to trial by jury, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences is sufficient to insulate the plea from subsequent attack in collateral proceedings. See Boykin v. Alabama, *supra*, at 244, note 7, 89 S.Ct. 1709."

This language is extremely significant because, at least in my opinion, it invites the trial judges of Missouri to utilize a procedure which could insulate most guilty pleas from successful subsequent attack in Rule 27.25 and 27.26 proceedings, and in federal habeas corpus proceedings.