**Abraham W. SKAGGS, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 55777.**

Supreme Court of Missouri,
Division No. 1.

Feb. 22, 1972.

Coleman, Ross & Cekovsky, Jack H. Ross, Clayton, for movant-appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

HOLMAN, Presiding Judge.

On November 2, 1960, movant (hereinafter referred to as defendant) pleaded guilty to the crime of murder in the first degree. He was sentenced to life imprisonment. On April 14, 1970, he filed a motion pursuant to S.Ct. Rules 27.25 and 27.26, V.A.M.R., to withdraw the plea of guilty and to set aside the judgment. The trial court held an evidentiary hearing, made findings of fact, and overruled the motion. Defendant has appealed.

By the time the motion was filed the court reporter who took the proceedings when the plea was entered had died and hence no transcript thereof is available. Also, James J. Rankin, who was defendant's attorney, was deceased and there was no way the State could directly rebut certain testimony of defendant concerning his representation. The only testimony offered was that of the defendant, although the State did offer two exhibits which were admitted without objection.

The grounds alleged in defendant's motion are as follows: "(a) Petitioner's plea of guilty was an involuntary plea, prompted through ignorance, coercion and fear. That the trial court record fails to show a voluntary plea of guilty under the law. (b) Petitioner's plea of guilty should not have been accepted by the trial court, having been made by defendant's counsel when the defendant did not desire to enter a plea of guilty, but to the contrary, indicated to his counsel that he was not guilty and did not desire to enter a plea of guilty to the charge."

Defendant testified that he was 17 years of age when his plea was entered, and he has since learned that at that time his IQ was between 80 and 85; that at that time he had reached the 5th grade but that after giving him an entrance examination at the prison school they started him in the first grade; that he is now about to complete the 8th grade; that the only time he saw his lawyer was in court the day he pleaded guilty; that he informed his lawyer that he was not guilty and did not want to plead guilty; that he did plead guilty however because his lawyer told him if he took it to a jury trial they would give him the death penalty and he believed that; that he was confused and didn't understand all that was going on; that the court at that time asked him if he was pleading guilty and he said that he was. Defendant further testified as follows: "The Court: Who coerced you into pleading guilty? A. My lawyer, Mr. Rankin. The Court: How did he do that? A. By telling me if I didn't plead guilty a jury would find me guilty and then I would go to the gas chamber. * * The Court: And I told you at the time that the range of punishment in this case was up to life or death if found guilty. A. I think so. The Court: And only the jury could discharge you. You were entitled to a jury trial. A. I don't know much about the law, I didn't know much about the law then. The Court: You didn't indicate to the Court you wanted a jury trial? A. I was leaving that up to Mr. Rankin.

* * * * * *

Q. (by Mr. White). You said that Mr. Rankin told you that if you stood trial in front of a jury the jury would, or could, give you death? A. Would. Q. That was his opinion as your attorney? A.

Yes, sir. Q. Because he told you that, you decided to plead guilty? A. I was going along with him. * * * Q. He got across he thought you would get that from the jury? A. Yes, sir. Q. So you had better plead guilty? A. Yes, sir. Q. And take life? A. Yes, sir. Q. So when they asked you if you pleaded guilty, you said yes to the Court? A. Yes, sir, that is what I said."

Upon motion of Mr. Rankin defendant was sent to Malcolm Bliss Mental Health Center for a psychiatric examination. The report therefrom was admitted in evidence. Portions of it are as follows: "This is the first Malcolm Bliss Hospital admission for this seventeen-year-old white male referred by court order for evaluation and admitted on August 30, 1960. He is charged with first degree murder. We have observed, examined and tested him. The patient states that he did kill the victim, but doesn't know why he did it. He remembers bringing her to the woods and taking down her pants and fondling her genitalia but denies having intercourse with her. He became frightened and upset and remembers hitting her with his hand and then with a tree limb, but feels most of the events are unclear in his mind. Past history reveals that the patient had a very difficult and poorly adjusted family life with early homo and heterosexual experiences * * *. He admits to extreme difficulty relating to women or girls and is fearful of them. * * * Psychological testing reveals the patient to be of dull normal intelligence with no evidence of organic brain damage. The impression is one of an immature and hostile individual. * * * Diagnosis: Schizoid Personality Disturbance. Recommendations: It is our opinion that the patient knew right from wrong at the time of the crime and is now capable of cooperating in his own defense. We further feel that he has a propensity to the commission of criminal sexual offenses based on his psychiatric disorder, which has existed for several years."

The court made the following findings: "The Court finds as a fact that counsel, Mr. James Rankin, was employed by the defendant and entered his appearance on August 11, 1960; that defendant had adequate time to confer with counsel; that a plea of guilty was entered on November 2, 1960, after conferring with counsel; that the plea of guilty was voluntarily and intelligently made; that the sentence and judgment was in accord with and appropriate to the facts of the case, and that no manifest injustice resulted from said plea of guilty and imposition of sentence."

At the outset of our consideration of this appeal it should be mentioned that "under the provisions of S.Ct. Rule 27.26(j) the burden of proving the grounds for relief is upon the movant and that upon appeal our review is 'limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous,' and that after sentence, according to Rule 27.25, the court may set aside the judgment and permit the defendant to withdraw his plea of guilty only if such is necessary in order to correct manifest injustice." Russell v. State, Mo.Sup., 446 S.W.2d 782, 785–786. We also think the following is applicable to our review: "[T]he trial court had the right to reject testimony on behalf of the movant, even though there was no contrary evidence offered at the hearing. That is particularly true when the favorable testimony came from appellant himself, with an obvious interest in the outcome, and the proceedings for relief arose sometime after the events in question and after death had removed from the scene persons with direct knowledge of the events." Shoemake v. State, Mo.Sup., 462 S.W.2d 772, 775.

Briefly stated, defendant's contention on this appeal is that the trial court erred in refusing to permit him to withdraw his plea of guilty because the plea was not voluntarily and intelligently entered. As heretofore appears, he says Mr. Rankin coerced him into pleading guilty

by telling him that if he had a trial the jury would send him to the gas chamber. Defendant's testimony that the only time he saw Mr. Rankin was at the time his plea was entered is not believable. The record shows that Rankin filed a motion for a mental examination on August 11, 1960. He appeared the next day and entered a plea of not guilty and trial was set for October 3. Judge Nangle stated into the record that defendant was with him at that time. On August 24 the motion was heard and examination ordered. Thereafter, Mr. Rankin obtained two continuances, no doubt because the report of the examination had not been filed. On October 28 the report was filed, and on November 2 the plea was entered. A presentence investigation was ordered and defendant was sentenced on January 27, 1961. The foregoing activities would indicate that Mr. Rankin must have conferred with defendant on occasions prior to the plea. Moreover, defendant does not point out any manner in which he was handicapped by the alleged failure of his attorney to confer with him more extensively.

■ We are of the view that defendant's own testimony supports the trial court's finding that the plea was knowingly and voluntarily entered. That testimony shows that defendant knew that the punishment was either life or death and that he entered the plea in order to "take life." It also shows that he knew he could have a jury trial and that he personally stated to the court that he was pleading guilty. We do not believe that Mr. Rankin told him he *would* receive the death sentence if tried by a jury. No doubt he did advise him that such was possible and perhaps probable, and that of course was his duty. Although defendant now says that he told Mr. Rankin that he was innocent and did not want to plead guilty, we think it obvious that he feared the death penalty and knowingly and voluntarily followed the advice of his attorney and decided to plead guilty in order to avoid the possibility of a death sentence and to accept what he

considered to be a reasonably certain sentence to life imprisonment.

■ The mental processes that admittedly brought about defendant's plea would not cause it to be invalid. It is now well settled that a plea of guilty is not invalid merely because it is entered to avoid the possibility of a death penalty. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747. And that is so, even though defendant is unwilling to admit participation in the crime. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162. Defendant has cited Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, but that case was decided long after this plea was entered and it has been held not to apply retroactively. Crego v. State, Mo.Sup., 447 S.W.2d 550; Meller v. State (8th Cir.), 431 F.2d 120. He has also cited other federal cases, such as Pedicord v. Swenson (W.D.Mo.), 304 F. Supp. 393, and Mountjoy v. Swenson (W.D. Mo.), 306 F.Supp. 379, but those cases do not support his contention upon the facts of the instant case.

■ We think it is worthy of consideration that this motion was not filed until 9½ years after the plea was entered, during which time defendant's attorney and the reporter had died. In the recent case of Flood v. State, Mo., 476 S.W.2d 529, this court said: "We note that the motion in this case was filed long after the death of the judge who accepted the pleas and more than 12 years after the sentences were imposed. A motion for leave to withdraw a plea of guilty after sentence should be filed within a reasonable length of time, taking into consideration the nature of the allegations of the motion. See: ABA Standards for Criminal Justice, Pleas of Guilty, § 2.1(a) (i), p. 55; 55 Columbia Law Review 366, 379–380. Whether a motion is timely is a question which must be determined on a case to case basis." In this case the fact that defendant waited so long to file the motion causes us to question the truth of his testimony. If he had been coerced by Mr. Rankin into

pleading guilty against his will it would seem reasonable that he would have sought to redress that alleged wrong long before he did. He certainly had knowledge of the situation immediately. While we have not yet imposed any ironclad time limitation on withdrawal of pleas of guilty, we think the time lapse in filing a motion is a relevant factor to be considered in determining the merits.

■ We are not unmindful of the fact that defendant had a low IQ. We think it appears by this record, however, that he had sufficient mental ability to understand what he was doing when he entered his plea and to determine that he desired to pursue that course of action.

As indicated, we rule that the findings and judgment of the trial court are not clearly erroneous and that, since no "manifest injustice" has been demonstrated, defendant was not entitled to withdraw his plea of guilty.

Judgment affirmed.

SEILER, J., and PRITCHARD, Special Judge, concur.

BARDGETT, J., not sitting.