STATE of Missouri, Respondent,

v.

Sylvester YOUNG, Jr., Appellant.

KCD 26119.

Missouri Court of Appeals,
Kansas City District.

Dec. 4, 1972.

Pierce & Associates, Kansas City, John Cosgrove, Kansas City, of counsel, for appellant.

John C. Danforth, Atty. Gen., C. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, C. J., PRITCHARD, and WASSERSTROM, J., and J. DONALD MURPHY, Special Judge.

PRITCHARD, Judge.

Appellant filed his motion under Rule 27.26, V.A.M.R., to vacate and set aside sentences imposed upon him upon two pleas of guilty to robbery in the first degree on February 20, 1962. The grounds for relief stated, and which are here presented, are that in the pleas of guilty appellant was denied effective assistance of counsel, and that the pleas "were coerced by the urging of his counsel, who said that he could be given a sentence of one hundred years in both cases. These pleas were not voluntary nor were they made with a clear understanding of his rights." The trial court denied appellant's motion, and he appeals.

Appellant was originally faced with three charges of robbery in the first degree. The first charge was disposed of on February 19, 1962, wherein the sentence was assessed at ten years imprisonment (Case No. C–31547). Mr. Joseph A. Harrington, who, as to the preceding trial advised appellant, "you understand that you have a right to have your attorney file a motion for a new trial? DEFENDANT SYLVESTER YOUNG, JR.: Yes. MR. HARRINGTON: And if the Court gives you a new trial, you would have another trial by a different jury?", to which appellant answered "Yes." Appellant further answered that he understood that the punishment could be greater or less, and that he was directing Mr. Harrington not to file a motion for new trial, being satisfied with the sentence and reconciled to the fact that he was going to do ten years in the penitentiary on that charge. Appellant, upon being questioned by the court, told the court that he was directing his attorney not to file a motion for new trial, and that he was waiving that right. Then followed the proceedings with respect to the two guilty pleas. In Case No. C–31546, appellant's counsel stated that he would withdraw his plea of not guilty and enter his plea of guilty, and appellant stated that was his wish and that he had so directed counsel, that he was pleading guilty to that charge because he was guilty, that he was entitled to a jury trial, and that if he were found guilty by a jury the punishment imposed might be more or less than the court would impose, and that he was asking the court to accept the plea of guilty because he was guilty. A sentence was then pronounced of ten years imprisonment to run consecutively to the sentence in Case No. C–31547, making a total of twenty years. The same questions were put to appellant in Case No. C–31548, and a ten year sentence was imposed to run concurrently in the other two cases, "making a total of twenty years in the Missouri State Penitentiary."

On the hearing of the instant motion appellant testified that in 1962 he received two consecutive ten year sentences, and had then already served the first sentence. At the time of his pleas he was represented by Mr. Joe Harrington as court appointed counsel whom he first saw on the day he went to trial in the first case. That trial, before a jury, took approximately thirty minutes after the jury was picked. Appellant had been in jail about three months prior to that trial. Before that trial appellant's counsel told him he would see into a requested continuance thereof. "And after my trial, he had told me that if I took the other two charges to trial that I possibly would get fifty years on each one, so I copped out and dropped my appeal." Counsel told him it would be unwise to go to trial on the other two charges, and that before the court could accept pleas in the other two cases, he "would have to drop your motion for a new trial and/or your appeal in respect to the case you were found guilty on." Appellant relied on Mr. Harrington's representations and believed what he said because "I didn't know law."

As to why he answered the court that he wanted to plead guilty, appellant testified: "Well, I didn't tell my lawyer that I wanted to plead guilty. He requested that I plead guilty. Q. In other words you are saying that you pleaded guilty upon the advice of your lawyer. A. On the advice of my lawyer, yes." Appellant hardly got a chance to confer with his lawyer, seeing him twice. "A. Yeah, that was just two occasions, that was the trial, when I first come down for the trial, and the next time when I came down the next day for that cop-out, that's when he brought me about this fifty years what I possibly would get if I tried to take the trials again. Q. And those were the only two times you ever had a chance for short conferences with him? A. Right. * * * Q. And did you tell him that you wanted to go to trial on the case? A. Yes. Q. And he told you that he would represent you in the trial? A. Yes, he said he would. Q. And are you telling the Court that you didn't discuss the facts of that case at all with your attorney before going to trial? A. No, he said he already had the details; he didn't confer too much about nothing."

On cross-examination appellant acknowledged that his lawyer told him he would cop him out. "Q. He said he would do that? A. Yes. He asked me—he said he would cop me out, and he said it would be best for me to plead guilty, because they had me for good on the next two charges. So—I hesitated on that, and then he brought up this fifty years for each charge, said it was pretty serious. Q. Did he tell you you might get fifty years if you went to trial? A. He said I could get fifty years for each one of them." Appellant took his counsel's advice. He further acknowledged that his lawyer told him that Mr. Harrington was dead. In answer to questions by the court appellant testified that he was not claiming that the Prosecuting Attorney or his assistant, or the court misrepresented anything to him.

■ One of appellant's arguments on his claim of ineffective assistance of counsel is the shortness of time of interview. Competence of counsel cannot be based solely upon the time spent in interviewing the client. Johnson v. State, Mo., 442 S.W.2d 41, 45 [1, 2]; Mason v. State, Mo., 468 S.W.2d 617, 622; and Kress v. United States (C.A. 8th), 411 F.2d 16. Note here also that appellant acknowledged that Mr. Harrington told him he already had the details of the case, and there is no suggestion that appellant lost anything by reason of the shortness of interview before his entry of the pleas of guilty. And while he refers in his testimony to the shortness of his jury trial the day before, and the failure of his counsel to cross-examine one of the state's witnesses, there is no suggestion that any imperfection, if any, of counsel's representation carried over to the subsequent pleas of guilty. As to the possible fifty year sentences, if appellant stood trial, such was within the limits of the punishment for the offenses of robbery in the first degree under Section 560.120, RSMO 1959, V.A.M.S., and it was counsel's duty to advise his client of such possibilities. See Jones v. Swenson (E.D.Mo.) 339 F.Supp. 789, 792 [3], where "Petitioner testified that his attorney told him he would 'get fifty years for sure' if he went to trial." It was held, "Clearly, such advice should not be considered coercive on the part of petitioner's counsel, but should be considered counsel's duty if petitioner is going to have made a knowing plea."

■ The trial court must have disbelieved appellant's testimony that he must waive the filing of a motion for new trial in order to have his guilty pleas accepted. Note that the record of the proceedings shows that appellant told the court that he was directing his counsel not to file a motion for new trial and that he was waiving it. Of further importance is Mr. Harrington's death, which sealed his lips, and appellant filed his motion almost ten years after his pleas. These are factors which may be considered. See Skaggs v. State, Mo., 476 S.W.2d 524, 528 [7], and cases and authority cited.

The court here did personally determine that appellant was pleading guilty because he was guilty, and that he knew of his right to jury trial. Appellant on the preceding day had been through a jury trial on a like charge, so it must be inferred that he knew something of the elements of the offense of robbery in the first degree. These are circumstances which may be considered in determining if appellant had the requisite understanding of the charge. State v. Blaylock, Mo., 394 S.W.2d 364, 367. See also the discussion of the necessity of determining that the pleas are voluntarily and understandingly made in Flood v. State, Mo., 476 S.W.2d 529, 533.

It does not appear from the entire record that a mistake was made in accepting appellant's pleas of guilty, and the findings and conclusions of the trial court are not clearly erroneous. Crosswhite v. State, Mo., 426 S.W.2d 67.

The judgment is affirmed.

All concur.