**Albert Roy VanDYKE, Movant-Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. KCD 26614.**

Missouri Court of Appeals,
Kansas City District.

March 31, 1975.

---

Don Chapman, Jr., Chapman & Chapman, Chillicothe, for movant-appellant.

John C. Danforth, Atty. Gen., Robert Presson, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

DIXON, Judge.

Albert VanDyke pleaded guilty to a charge of second degree murder and was sentenced to life imprisonment. VanDyke filed this motion to vacate that sentence under Rule 27.26, V.A.M.R. The trial court denied the movant relief.

In 1951 the movant was indicted in Chillicothe, Missouri, for the murder of his grandmother. ˙ He was incarcerated in Livingston County, Missouri, on June 23, 1951, after he had been apprehended in and returned from Denver, Colorado. The venue for trial was changed to Linn County, Missouri. Movant then pleaded guilty to the second degree murder charge on April 3, 1952.

The movant asserts that the court below erred on three grounds in denying him relief. First, movant claims the trial court erred in overruling his motion to vacate the sentence because he did not enter his guilty plea voluntarily nor was there an affirmative showing on the record that his plea was voluntary. Second, movant asserts the trial court erred in overruling his motion because the original trial court failed to conduct a hearing to determine movant's mental competency at the time he entered his plea. Third, movant asserts the trial court erred in overruling his mo-

tion because the movant was prejudiced by not having counsel present when he waived his right to a preliminary examination.

The findings and conclusions of the trial court denying movant relief are not clearly erroneous. Movant's request for relief is denied.

Movant claims he did not voluntarily enter his guilty plea because at the time he pleaded guilty he was under the influence of drugs. He alleges he ingested several "tranquilizer" pills the night before and immediately prior to pleading guilty. Movant testified that during the time he was held in jail prior to trial he was given two "tranquilizer" pills daily. He said that instead of taking the pills each day he saved them. He said that he took eight pills the night before he pleaded guilty in an effort to commit suicide. He alleges he also swallowed four more pills within 90 minutes of pleading guilty. Movant claims that at the time he entered his plea, he was "uncapable of speech." He said, "I nodded my head and tried to speak and when asked for my plea, but was unable to answer." He also said, ". . . I didn't feel nothing, didn't feel no remorse or nothing, everything was neutral to me." The sheriff of Linn County and his wife were in charge of the jail during the time that the movant was incarcerated. They both testified that it was "possible" that the movant had received tranquilizer pills daily prior to the day he entered the plea. The sheriff of Linn County was present when the movant pleaded guilty. He said that the movant appeared "alert." He said, "I could see no action that would indicate any abnormality." The sheriff said that the movant did not appear to him to be "drugged" in any way. Ronald Somerville, who, in 1951, was the Livingston County prosecuting attorney, was present at the time movant pleaded guilty. He said,

"I don't recall a single thing about the events that occurred that morning to indicate, or would indicate anything other than the fact that Mr. VanDyke was ful-

ly aware of what was taking place and he fully participated in all the proceedings."

Somerville said that he could not remember that the movant acted in "any abnormal way."

Movant's own testimony indicates that when he pleaded guilty he was not in the comatose state of mind he now claims. Movant recalled the specific corner of the courtroom in which he conferred with his attorney prior to pleading. He also recalled that about one hour prior to pleading guilty he conferred with his attorney for ten minutes. He also recalled that he took the last of the tranquilizers in the courthouse 20 to 30 minutes prior to meeting with his attorney. He even recalled the name of a married couple, the Milligans, who were in the courtroom while he was awaiting his hearing and the particular town from which they came, Sumner, Missouri. There was no evidence other than movant's own testimony to indicate that he pleaded guilty involuntarily because he was under the influence of drugs.

Movant also claims his plea was involuntary because he was mentally incompetent. He attempted to show a prior history of mental illness to support that claim.

Movant testified that while he was in Denver, Colorado awaiting extradition to Livingston County, Missouri, a psychiatrist gave him a mental examination. In the opinion of the psychiatrist, movant suffered from "paranoid schizophrenia." The results of that examination were not presented, but on the motion, the defendant offered his own hearsay statement of the psychiatrist's opinion. The trial court indicated he would not consider this evidence because of the hearsay nature of the proof. The movant also testified that he had twice attempted suicide in years prior to entering his plea; that he had been declared mentally incompetent in Bourbon County, Kansas; that he had been placed in a Veterns Hospital for alcoholism. Additionally, he offered evidence of an outburst of violence on his part while confined in the county jail. Oddly enough, he also testified to a mental examination made by physicians at the State Hospital No. 2 in St. Joseph, Missouri, after he was charged. The movant said the examination indicated that the movant was mentally competent.

The issues thus raised are factual. Upon the basis of this evidence, the trial court's finding that movant's plea was not involuntary either because of his ingestion of drugs or his emotional state is clearly supported and could not be found to be clearly erroneous. Crego v. State, 447 S.W.2d 550, 553 (Mo.1969); Crosswhite v. State, 426 S.W.2d 67 (Mo.1968). Any issue of credibility was for the trial court, and a finding such as this one clearly based on credibility is entitled to deference. Goodloe v. State, 486 S.W.2d 430 (Mo. 1972).

The issue as to the claim that the trial court erred in failing to find the defendant incompetent to conduct a defense requires more explication. Under the statutes in effect at the time of the entry of the plea, the obligation of the trial court on the issue of competency to stand trial was to call a jury to inquire into the present capacity of the defendant. [Section 545.750 RSMo 1949, V.A.M.S., now repealed.] That obligation arose when the trial court "shall have reason to believe." The difficulty with the defendant's argument here is that the record on the 27.26 hearing does not clearly indicate how much of what the defendant now claims as a basis for the trial court's having "reason to believe" was actually made known to the court prior to the plea. It is certain one such fact was known to the trial court, the examination of the defendant by the doctors at the State Hospital. This because it is clear that the trial court ordered that examination. The report of the physicians is not in evidence, but the ultimate conclusion is in evidence from the defendant's own mouth. No criticism of the handling of the Rule 27.26 hearing is intended by these references to the rather meager rec-

ord. The plea was over twenty-five years ago; the defendant was paroled sometime prior to 1970 and then recommitted after commission of another felony. The reporter is deceased and defendant's lawyer at the plea proceeding is deceased. The defendant testified to all of the alleged facts showing his mental state, but there is no showing of any kind that the trial court was apprised of those facts, other than the examination in St. Joseph. On this issue, the trial court's finding that the defendant had not sustained the burden of establishing that he was mentally incompetent to conduct his defense at the time of the plea is not clearly erroneous and must be sustained. *Crosswhite* and *Crego*, supra.

■ Movant also claims under his first point that the trial court erred because there is no affirmative showing on the record of the original trial that the movant pleaded voluntarily. He claims that the trial judge should have established on the record through inquiry of the movant that the movant pleaded guilty understandingly and voluntarily. The movant asserts, "It is the duty of the court to determine that a defendant's plea is voluntary."

Movant relies on Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), which held that it was reversible error for an Alabama state court to accept a guilty plea on a charge punishable by death without an affirmative showing on the record that the plea was intelligent and voluntary.

However, *Boykin*, supra, has not been applied retroactively. Crego v. State, 447 S.W.2d 550, 553 (Mo.1969). Also Babcock v. State, 485 S.W.2d 85, 89–90 (Mo.1972), held:

"Noncompliance with Rule 25.04, . . . supra, does not require that a plea of guilty to be set aside if the record shows it to have been, in fact, voluntarily entered, and a plea which predates Boykin v. Alabama, supra, is not judged on its standards because it has not been applied retroactively, Bracy v. State, Mo., 456 S.W.2d 302."

Movant also relies on State v. Roach, 447 S.W.2d 553 (Mo.1969), a direct appeal from a guilty plea and the overruling of a motion to withdraw the plea. The conviction was reversed because there was no affirmative showing on the record that the guilty plea was entered voluntarily. However, the lack of an affirmative showing on the record of the voluntariness of the plea in *Roach* was supported by independent facts in the record which indicated that the plea was actually involuntary. The court in *Roach* clearly relied upon these facts in reversing the trial court. *Roach*, supra, did not establish that the lack of affirmative showing of voluntariness is alone per se reversible error in cases involving pleas taken prior to *Boykin* and in fact did not rely on the *Boykin* rule referring to *Crego* as holding *Boykin* was not to be retroactively applied.

Indeed, it has been held as to pleas entered prior to *Boykin* that there is no requirement that "the trial judge make explicit inquiry of a defendant." Flood v. State, 476 S.W.2d 529, 533 (Mo.1972). The court in *Flood*, supra, said, " . . . the basic question is whether or not Flood's pleas of guilty were in fact voluntarily made with understanding of the nature of the charge, . . . not whether the trial judge followed some particular procedure before accepting the pleas." (l. c. 533).

The lack of an affirmative showing of voluntariness on the record does not vitiate a 1952 plea, and the trial court's finding on this issue was correct.

■ Movant's third and final point on appeal is that the court below erred in overruling his motion because the movant did not have counsel when he waived his right to a preliminary examination. The movant failed to raise this point in his motion to vacate his sentence. The trial court made no findings or conclusions on the point. It should not be considered on appeal for the first time. Fritz v. State, 449 S.W.2d 174 (Mo.1970).

The judgment is affirmed.

All concur.